In the Matter of Gary
GEBHART, Debtor.

AAV–UNITED SERVICE
COMPANY, Plaintiff,

v.

Gary GEBHART, Defendant.

Bankruptcy No. 84–130.
Adv. No. 84–135.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 28, 1985.

Elihu Berman, Krug, Berman & Silverman, Clearwater, Fla., and Dennis J. Levine, Tampa, Fla., for plaintiff.

Charles Perry, Largo, Fla., for defendant.

MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding and the matter under consideration is the dischargeability, vel non, of a debt admittedly due and owing by Gary Gebhart, a Debtor currently involved in a Chapter 7 case. The claim of non-dischargeability is asserted by AAV–United Service Company (AAV–United) and is based on the contention that the Defendant-Debtor obtained by false pretenses, made with actual intent to defraud the Plaintiff, $10,000 from the Plaintiff and, therefore, by virtue of Section 523(a)(2)(A), the debt shall be declared to be non-dischargeable. The facts relevant to the resolution of the controversy as developed at the final evidentiary hearing can be summarized as follows:

At the time relevant to this transaction, Gary Gebhart was the President and principal operating officer of a corporation known as Skate Key Roller Rink, Inc. (Skate Key) located in St. Petersburg, Florida. Skate Key, besides operating the roller rink, also maintained on its premises

several coin operated and amusement machines which were placed on location by a distributor of coin operated amusement devices and vending machines. AAV–United is engaged in a similar business and also has coin operated amusement machines and vending machines placed in several locations in Pinellas County. Under the usual arrangement, the owner of the establishment was to receive a commission from all monies collected by the machines.

Sometime in April, 1982, Gebhart approached the representative of AAV–United and sought to explore the possibility of obtaining coin-operated amusement machines. This is the initial transaction with the representative of AAV–United which forms the basis of this controversy. It is alleged by AAV–United that Gebhart assured the representative of AAV–United that the amusement machines which were at that time on Skate Key's premises and which were leased from Eli Witt, will be removed shortly inasmuch as there were only two months left on that particular lease and AAV–United will be able to replace all the machines with its own. It is without dispute that the Eli Witt lease still had a year and one-half more to go before it expired and it was not expiring by its own terms as indicated or claimed to have been indicated by Gebhart. It is claimed by AAV–United, based on these representations, AAV–United did, in fact, enter into a lease agreement for the lease of vending machines and amusement devices. The lessees named in the lease were Jerry Sweatman and Gary Gebhart, d/b/a Skate Key. It is clear that neither Jerry Sweatman nor Gary Gebhart operated the skating rink as a partnership or as a joint venture, but the roller rink was operated by Skate Key, Inc., a corporation. The lease executed on May 8, 1982 was prepared by AAV–United on its customary lease form, which included the provision that AAV–United agreed to advance to the leasee against commissions to be earned the sum of $10,000. It further appears that in connection with this transaction, Gebhart submitted an application for advance against commission. It is admitted by Gebhart that AAV–United did,

in fact, advance $10,000 as part of this transaction. In due course, the application was forwarded to the home office of AAV–United and was approved. To further complicate the matter, however, the application indicated that the applicants were Jerry Sweatman and Gary Gebhart, d/b/a Renaissance Restaurant, Inc. It appears that at that time Gebhart and possibly Sweatman contemplated to form a corporation and to open up a restaurant and operate the same under the name of the Renaissance Restaurant. It is without dispute that at the time of this transaction, the restaurant was not in business, it had no facilities whatsoever for the placement of any coin-operated machines. The application indicated that the coin-operated machines were to be placed on the premises of Skate Key without identifying, however, whether the machines were to be used by a corporation operating a restaurant or a restaurant operated by Gebhart individually under a fictitious name.

The promissory note executed in connection with the $10,000 transaction was signed by Jerry Sweatman, Gary Gebhart, d/b/a/ Renaissance Restaurant, Inc. by Gary Gebhart as President. The note was signed by Gebhart and Sweatman as individual endorsers. No place in the promissory note appears the name of Skate Key and there is no reference made to the Skate Key, whatsoever, with the exception of the equipment lease which describes the customer as Jerry Sweatman and Gary Gebhart, d/b/a Skate Key and which was signed by Jerry Sweatman and Gary Gebhart, d/b/a Skate Key. It was also endorsed individually by Gebhart. On the same day the note and lease were executed, there was an identical lease executed which identified the lessee of the equipment as Jerry Sweatman and Gary Gebhart, d/b/a Renaissance Restaurant. This was also signed by Gebhart as President, for Jerry Sweatman and Gary Gebhart, d/b/a Renaissance Restaurant and again it was individually endorsed by Gebhart. On the same day, there was an identical lease executed involving cigarette vending ma-

chines. This was again executed by Gebhart in the same fashion as he executed the contract relating to the coin-operated equipment lease. As part of this transaction, Gebhart executed a security agreement and financing statement on the same date, identifying AAV–United as a secured party. The security agreement was signed by Renaissance Restaurant, Inc. by Gary Gebhart, Partner/President. It further appeared that the check actually issued by AAV–United was made payable to Jerry Sweatman and Gary Gebhart. The check was endorsed by Gebhart and it was apparently deposited in the bank account maintained by one of the entities operated by Gebhart, although it is impossible to tell from the check itself where it was deposited inasmuch as the reverse side of the check merely indicates that it was credited to the account of the "written name payee" (sic) and in the sense there are two, possibly four, named payees on the check—Jerry Sweatman, Gary Gebhart, d/b/a Renaissance and Jerry Sweatman and Gary Gebhart. Thus, it is impossible to tell whether or not this check was deposited in a personal account of Gebhart or in the business account maintained by him for either the restaurant or for the Skate Key.

Based on the foregoing, it is the contention of AAV–United that a statement made by Gebhart to the representative of the Plaintiff that the Eli Witt contract will expire in two months and, therefore, he will be in a position to enter into an equipment lease with the Plaintiff was materially false; that the Plaintiff relied on said false statement and, upon reliance of said statement, advanced the $10,000 against commissions to be earned by Gebhart and, therefore, it is entitled to a declaration that the debt was, in fact, obtained by false pretenses by Gebhart and, therefore, non-dischargeable by virtue of § 523(a)(2)(A) of the Bankruptcy Code.

█ It should be pointed out at the outset that the burden of proof to establish all operating elements of a claim of non-dischargeability under § 523 is clearly the burden of the plaintiff. *National Bank of*

*North America v. Newmark (In re Newmark)*, 20 B.R. 842 (Bankr.E.D.N.Y.1982). The quality of proof required is clear and convincing although it is not a proof beyond reasonable doubt.

█ Using this standard, it is clear that AAV–United failed to establish its claim of non-dischargeability with the requisite degree of proof. First, it is unclear whether Gebhart, qua an individual, obtained any monies whatsoever for AAV–United. The most that can be said, based on this record, is that AAV–United advanced $10,000 either to a partnership of Gebhart and Sweatman or to a corporation known as Skate Key, Inc. or to a corporation known as Renaissance, Inc. This being the case, since the obtaining of money by a debtor is an indispensable element of a claim of non-dischargeability under § 523(a)(2)(A), AAV–United's claim must fail, not even considering the inadequacy of proof needed to establish fraud.

A separate final judgment will be entered in accordance with the foregoing.