**In re Daniel E. McDONALD and Phyllis S. McDonald, a/k/a D.E. McDonald, Debtors.**

**J.T. HAILE, Jr., Bert M. Jones, J. Truett Gill and Ed R. Fowler, Plaintiffs,**

v.

**D.E. McDONALD, Defendant.**

**Bankruptcy No. 385–30352–A–7. Adv. No. 386–3309.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 21, 1987.

---

Aubrey J. Fouts, Carr, Evans, Fouts & Hunt, Lubbock, Tex., for plaintiffs.

David C. Cowden, Grand Prairie, Tex., for debtors/defendant.

## OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

The Court writes to announce its decision in the above-referenced adversary proceed-

ing.[1] On April 14, 1986, J.T. Haile, Bert M. Jones, J. Truett Gill, and Ed R. Fowler ("Complainants") brought this complaint to determine the dischargeability of a $2,300,-000.00 judgment debt. The Debtor, Daniel E. McDonald ("Debtor"), was found to have conspired to fraudulently convert properties of the Complainants in a jury trial to the Federal District Court and the judgment was affirmed by the Fifth Circuit Court of Appeals.[2]

The Court of Appeals describes the underlying facts in its Opinion affirming the judgment. This Court need not repeat those facts and will only briefly summarize the events that led to the judgment. The Complainants owned a business which operated grocery and convenience stores. They experienced "cash flow" difficulties and sought financing. The Debtor, through several entities and with the aid of James M. Malone and Leslie Hackler, purportedly entered into an arrangement with the Complainants to provide the desired financing. The arrangement was in fact a scheme to take control of the Complainant's business and transfer assets to the control of the Debtor and his confederates. No financing was ever arranged or obtained for the Complainants, but the assets of their business were used for several transactions which benefitted the Debtor and were unrelated to the purported objective of the arrangement. Also, approximately $2,000,000.00 was transferred by James Malone from the business accounts of the Complainants into a Dallas bank account. This money subsequently disappeared. The business, stripped of assets and heavily indebted, was in bankruptcy by 1981.

◼ At the several hearings the Court has held on this matter, the Complainants have alleged this judgment debt to be excepted from discharge under § 523(a)(2) and (a)(6). Yet, their complaint cites only § 523(a)(2). However, because the nature of the complaint is sufficiently clear from the pleading and its incorporated attachments, the Court accepts the complaint as raising both the § 523(a)(2) and (a)(6) objections. *In re Vaughn*, 462 F.Supp. 1040 (N.D.Tex.1978); *In re McGuff*, 3 B.R. 66 (Bankr.S.D.Cal.1980); Bankr.R. 7008; Bankr.R. 7009. Moreover, even though Complainants' complaint specifically cites only § 523(a)(2), the parties have addressed the § 523(a)(6) issue and tried it to the court by consent. See *D. Frederico Co. v. New Bedford Redevelopment Authority*, 723 F.2d 122 (1st Cir.1983); Bankr.R. 7054(a). In essence, the Complainants contend that a debt for "fraudulent conversion" is a non-dischargeable debt.

The Court has before it the Complainants' claim for affirmative relief in the trial Court,[3] the jury issues and answers, the judgment of the trial Court and the Opinion of the Court of Appeals affirming that judgment. The transcript of the trial was offered into evidence, but when the Debtor declined to make use of it, the Court released the transcript back to the custody of the Complainants. Complainants urge that collateral estoppel bars the Debtor from contesting the facts essential to their § 523 claims and that based on those facts they are entitled to judgment.

◼ This Court was presented with a somewhat similar situation in *Matter of Church*, 69 B.R. 425 (Bankr.N.D.Tex.1987). In *Church*, the Court applied a complicated four part analysis of a judgment debt to determine the collateral estoppel effect of the judgment and the nature of the debt. The inquiry asks: (1) whether courts of the state whose court rendered the subject decision would apply collateral estoppel in a subsequent case, (2) whether the record

---

1. This is a core proceeding. This memorandum shall constitute findings of fact and conclusions of law.

2. James M. Malone and D.E. McDonald v. J.T. Haile, Jr., Bert M. Jones, J. Truett Gill, and Ed R. Fowler, Case No. CA3–79–1021–F (N.D.Tex.) *affirmed* (5th Cir.1983), 715 F.2d 575.

3. The prior proceeding was initiated by one of the Debtor's entities as party plaintiff. The Complainants herein were awarded judgment on their counterclaim and the parties plaintiff were denied relief.

meets the federal test for the application of collateral estoppel,[4] (3) whether the prior non-bankruptcy trial was conducted without a view to predetermine dischargeability issues, and (4) whether each component of the judgment debt should be excepted from discharge.

■ The judgment that forms the basis of the Complainants' case was rendered by a Federal Court exercising diversity jurisdiction. The preclusion law applied in this case is based upon federal common law because the prior judgment was rendered by a Federal Court. *Stovall v. Price Waterhouse Co.*, 652 F.2d 537 (5th Cir.1981); *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.) *reh. den.* 514 F.2d 1072 (5th Cir.), *cert. den.* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Thus, federal common law supplies the standards for the first part of the Court's inquiry above.[5]

■ These standards are the substance of the second part of the Court's inquiry. Thus, analytically speaking, a Federal Court judgment alleged as a ground for excepting a debt from discharge, is not tested under the full faith and credit statute because federal common law determines the finality and scope of the judgment. Federal common law determines the collateral estoppel effect of a prior judgment according to the three prong test set out in *White v. World Finance of Meridian.*[6] See *Johnson v. United States*, 576 F.2d 606 (5th Cir.1978); *Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663 (11th Cir.1984).

The Court now takes up the three part test of *White v. World Finance of Meridian.* The special interrogatories submitted to the jury by the Federal District Court[7] asked, *inter alia*, whether the Debtor conspired with James Malone and Leslie Hack-

ler to convert the assets of the Complainants by use of fraudulent representations.[8]

It is true that the jury found that neither James Malone nor Leslie Hackler were acting as the agents of the Debtor. However, the jury also found that the Debtor adopted and ratified their actions and misrepresentations and that he engaged in a conspiracy to convert the Complainants property by use of the representations found by the jury to be both fraudulent and made with "such gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just case or excuse."

When the Debtor appealed the judgment, the Court of Appeals for the Fifth Circuit rejected the Debtor's argument stating:

> In appealing from [the] judgment, the principal point made by the sole appellant, McDonald, is that, as a matter of law, he was not liable for the conspiracy found by the jury because he did not participate in any conspiracy, and in any event, the conspiracy which it was alleged he had joined was not one "to convert the assets" of the claimants.
>
> The point is almost frivolous. Our recital of the facts reveals that upon the basis of a preponderance of the evidence the jury was warranted in finding that McDonald, Malone, and Hackler informally and by conduct entered into a common understanding with common purposes, shared by each of them, to use false representation both to defraud the claimants and to convert the claimants' property to the conspirators' own use, without the claimants' consent, and that the conspirators engaged in many overt actions to effectuate their design.

\*   \*   \*   \*   \*   \*

---

**4.** The federal test for applying collateral estoppel in the Fifth Circuit requires that the factual issues determined in the prior proceeding be (i) identical to the issues in the present proceedings, (ii) actually litigated, and (iii) necessary to the resulting judgment. *White v. World Finance of Meridian, Inc.*, 653 F.2d 147 (5th Cir.1981).

**5.** *Church*, 69 B.R. 425, dealt with the effect of a state court judgment and the full faith and credit statute, 28 U.S.C. § 1738. The test here dif-

fers only in the source of the applicable legal rule.

**6.** See note 4, *supra.*

**7.** See F.R.C.P. Rule 49.

**8.** See Appendix "A" where the Court sets out the pertinent jury findings.

There was ample proof that the appellant McDonald and his confederates, Malone and Hackler, in unison applied, appropriated, and used the claimants' property for the benefit of the confederates without the consent of the claimants..... There is no merit whatsoever to appellants' contention that the answer given by the jury to [the conspiracy question] is inconsistent with jury answers to other questions relating to alleged agency relationships between McDonald and Malone.... Often one who is neither a principal nor an agent is a conspirator....

*McDonald v. Haile,* Cause No. 82–1023, slip op. at 12–15 (5th Cir. August 29, 1983 [table]).

■ An examination of jury issues and answers set out in Appendix "A" demonstrates that there can be no doubt that the findings of the jury relating to the misrepresentations made by the conspirators satisfy the criterion for "actual fraud" as that term is used in 11 U.S.C. § 523(a)(2)(A). Compare with *In re Hunter,* 780 F.2d 1577 (11th Cir.1986). Nor can there be any doubt that the conduct of the conspirators was malicious and the cause of injury to the claimants. See *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983); *In re Cecchine,* 780 F.2d 1440 (9th Cir.1986).[9]

It is apparent after examining the record that the factual issues in this discharge proceeding and the issues determined in the prior non-bankruptcy proceedings are identical. It is likewise certain that the issues determined in the prior proceedings were actually litigated and necessary to the resulting judgment. The predicate elements for excepting the debt owed the claimants from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6) are all set out plainly in the jury issues and responses. The judgment of the District Court states that James Malone and the Debtor are jointly and severally liable to the claimants for the damages assessed by the District Court based upon the jury findings. The

Court of Appeals thoroughly considered the Debtors arguments against the judgment, rejected them, and affirmed the judgment. The bankruptcy court holds that the federal test for the application of collateral estoppel is satisfied.

■ The Court inquired of Debtor's counsel whether the District Court trial was fair, and the response was in the affirmative. Under the third prong of the *Church* analysis, the Bankruptcy Court takes a global view of the prior proceedings to determine whether bankruptcy was anticipated and a non-dischargeable judgment debt sought by the creditor. The Court finds no indication that the claimants conducted the prior trial with a view to anticipate this discharge issue. The Debtor has objected to the fairness of this discharge proceeding on the ground that, because the Complainants were petitioning creditors in the involuntary petition which lead to this bankruptcy case, the Complainants should not be heard to object to discharge. The Debtor's "fairness" argument does not address the prior proceedings. The Court has found no authority for the proposition that a creditor holding a non-dischargeable claim should not join in an involuntary petition solely because of the non-dischargeable nature of their claim. Nor has the Court located or been cited to any authority suggesting that an involuntary petitioner waives a potential objection to discharge by joining in the petition.

As in the *Church* case, the factual findings supporting the prior judgment are based upon a preponderance of the evidence. This Court has analyzed the issue of whether a prior judicial determination based upon a preponderance of the evidence can be sufficient to support a non-dischargeability claim where clear and convincing evidence is required. The analysis reached the conclusion that the force of the prior judicial determination rested ultimately on the weight of the evidence supporting

---

**9.** In *Church,* 69 B.R. at 433, the Court noted conflicting interpretations of 11 U.S.C. § 523(a)(6). The Court finds in this case that specific intent to injure is amply demonstrated by the record. Thus the apparent Fifth Circuit requirement of a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse is, likewise, amply demonstrated by the record. Compare *In re Fielder,* 799 F.2d 656 (11th Cir.1986).

the factual determinations. *Church* 69 B.R. at 431. Here, the Court of Appeals has described the evidence as "ample" in the excerpt of the Opinion quoted *supra*. Moreover, the detailed description of the evidence set out in Appellate Court's Opinion provides a reliable indication of the trustworthiness of the evidence. The Debtor has not made any attempt to show this Court where or how the evidence is insufficient. In this situation, the Bankruptcy Court simply cannot employ a purely technical distinction between evidentiary standards to undo a fully litigated judgment.

Thus, for the reasons outlined above, this Court finds that applying collateral estoppel in this case is consistent with the exclusive jurisdiction which the Bankruptcy Court has over discharge issues of the type here considered. 11 U.S.C. § 523(c); *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The basis for the determination of the issues in the prior proceeding has been adequately set out before the Court. The transcript of the prior proceeding was offered to the Court by the Claimants, the Debtor declined to point out any mitigating or contradictory matters that may have appeared therein, and the Court released the transcript back to the Claimants. With the Memorandum Opinion by the Court of Appeals discussing the evidence, this Court is satisfied that it has before it a prior judgment supported by detailed facts sufficient as findings which allow the Bankruptcy Court to accurately discern the subsidiary facts upon which the alleged nondischargeability of the subject debt is based. See *Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984); *Matter of Poston*, 735 F.2d 866 (5th Cir.1984); *Matter of Allman*, 735 F.2d 863 (5th Cir. 1984).

The Court has had two hearings and letter briefs submitted by counsel. The record has been examined in detail. The Debtor has been given every opportunity to demonstrate injustice or to argue the

record. See *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981). The Court is satisfied that this is a proper case for the application of collateral estoppel, and that the Debtor is estopped from contesting the factual basis for excepting this judgment debt from discharge under both § 523(a)(2)(A) and § 523(a)(6).

■ The Court, having answered the first three questions of the *Church* analysis affirmatively, now turns to the fourth aspect of the analysis—inquiry as to the nature of the components of the judgment debt. The Debtor was adjudged liable for the sum of $2,300,000.00 with interest at 9% and court costs. Of the judgment debt, $2,200,000.00 was determined by the jury to be the fair market value of the claimants' property that was fraudulently converted by the conspirators. This is the appropriate measure of damages for conversion and for valuing a claim against the Debtor based upon conversion. *In re Krause*, 44 B.R. 159 (Bankr.N.D.Ill.1984); *In re Lewis*, 31 B.R. 83 (Bankr.W.D.Okla. 1983). Under the facts of this case, it is likewise the amount which the Debtor "obtained by" actual fraud and the actual pecuniary loss to the claimants resulting from the fraud. *In re Church*, 69 B.R. at 434–35. Thus, $2,200,000.00 represents a nondischargeable debt for actual fraud or for willful and malicious injury.

In *Church*, this Court held that punitive damages in the nature of a penalty would not be excepted from discharge under Section 523(a)(2). Punitive damages of $100,-000.00 here were awarded as an example to others or as a penalty or by way of punishment. It is obvious that the punitive damages awarded are not a debt for fraud or for a willful and malicious injury. Thus, this Court does not include the punitive damages as part of the non-dischargeable debt.[10]

Thus, the Court finds that the debt owed the claimants by the Debtor, for fraudulent

---

**10.** Punitive damages were found to be non-dischargeable in *In re Gelman*, 47 B.R. 735 (Bankr. S.D.Fla.1985), but this Court does not agree with that court's analysis of the legal issue. This Court agrees with the statement that "even if an

award of punitive damages is factually tied to a creditor's claim, there is no basis under § 523 to make award of punitive damages." *In re Brown*, 66 B.R. 13 (Bankr.D.Utah 1986).

conversion, of $2,200,000.00, together with interest as set forth in the judgment,[11] is excepted from discharge.

Counsel for claimants is to submit an appropriate order.

## APPENDIX "A"

QUESTION NO. 11.

Do you find from a preponderance of the evidence that James M. Malone was acting as the agent of D.E. McDonald in connection with the representations and negotiations leading to the transactions with the Defendants, Haile, Jones, Gill, and Fowler? In connection with this question, you are instructed that "agent" means a party who is acting with authority for the benefit of another in the performance and furtherance of a mission for him and who is subject to his control as to the details of the mission.

Answer "He was the agent" or "He was not the agent".

ANSWER He was not the agent

QUESTION NO. 12.

Do you find from a preponderance of the evidence that Leslie C. Hackler was acting with authority as the agent of D.E. McDonald in connection with the representations and negotiations leading to the transactions between the Defendant and the Plaintiff? In connection with this question you are instructed that agent means a party who is acting with authority for the benefit of another in the performance and furtherance of a mission for him and who is subject to his control as to the details of the mission.

Answer "He was the agent" or "He was not the agent".

ANSWER He was not the agent

QUESTION NO. 13.

Do you find from a preponderance of the evidence that Leslie C. Hackler was acting with authority as the agent of James M. Malone in connection with the representations and negotiations leading to the transactions between the Defendant and Plaintiff? In connection with this question, you

11. *In re Romero,* 535 F.2d 618 (10th Cir.1976).

are instructed that agent means a party who is acting with authority for the benefit of another in the performance and furtherance of a mission for him and who is subject to this control as to the details of the mission.

Answer "He was the agent" or "He was not the agent".

ANSWER He was the agent

QUESTION NO. 14.

a. Do you find from a preponderance of the evidence that Leslie Hackler made representations as to the financial services to be performed for the Defendants?

Answer "We do" or "We do not".

ANSWER We do

b. Answer this question if, but only if, you have answered "We do" to part (a) of this question. Otherwise, skip to Question No. 15.

From a preponderance of the evidence do you find that the above representations were false?

Answer "We do" or "We do not".

ANSWER WE DO

Answer the following subsections of this question if, but only if, you have answered "We do" to parts (a) and (b) of this question. Otherwise, skip to Question No. 15.

c. From a preponderance of the evidence do you find that Leslie C. Hackler knew the above representations were false or made such representations recklessly without any knowledge of truth and as a positive assertion?

Answer "We do" or "We do not".

ANSWER WE DO

d. Do you find from a preponderance of the evidence that the Defendants, Haile, Jones, Gill, and Fowler reasonably relied and acted upon the representations you have found in answer to the foregoing question?

Answer "We do" or "We do not".

ANSWER WE DO

e. From a preponderance of the evidence do you find that said representations were made with the intent to induce the Defendants to rely and act upon such representations and to perform some act which they otherwise would not do.

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

f. Do you find from a preponderance of the evidence that such representations as you have found in your response to this question were made by Leslie C. Hackler with malice? In connection with this question, you are instructed that "malice" is such a gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse.

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

QUESTION NO. 15.

a. Do you find from a preponderance of the evidence that Leslie Hackler made representations that the agreements he prepared conferred or involved rights, remedies and obligations which the agreements did not have or involve?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

b. Answer this question if, but only if, you have answered "We do" in part (a) of this question. Otherwise, skip to Question No. 16.

From a preponderance of the evidence do you find that the above representations were false?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

Answer the following subsections of this question if, but only if, you have answered "We do" to parts (a) and (b) of this question. Otherwise, skip to Question No. 16.

c. From a preponderance of the evidence, do you find that Leslie C. Hackler knew the above representations were false or made said representations recklessly without any knowledge of truth and as a positive assertion?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

d. Do you find from a preponderance of the evidence that the Defendants, Haile, Jones, Gill and Fowler reasonably relied and acted upon the representations you have found in answer to the foregoing question?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

e. From a preponderance of the evidence do you find that said representations were made with the intent to induce the Defendants to rely and act upon such representations and to perform some act which they otherwise would not do.

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

f. Do you find from a preponderance of the evidence that such representations as you have found in your response to this question were made by Leslie C. Hackler with malice? In connection with this question, you are instructed that "malice" is such a gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse.

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

QUESTION NO. 16.

a. Do you find from a preponderance of the evidence that James M. Malone made representations as to the financial services to be performed for the Defendants?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

b. Answer this question if, but only if, you have answered "We do" to part (a) of this question. Otherwise, skip to Question No. 17.

From a preponderance of the evidence do you find that the above representations were false?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

Answer the following subsections of this question if, but only if, you have answered

"We do" to part (a) and (b) of this question. Otherwise, skip to Question No. 17.

c. From a preponderance of the evidence, do you find that James M. Malone knew the above representations were false or made said representations recklessly without any knowledge of truth and as a positive assertion?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

d. Do you find from a preponderance of the evidence that the Defendants, Haile, Jones, Gill and Fowler reasonably relied and acted upon the representations you have found in answer to the foregoing question?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

e. From a preponderance of the evidence do you find that the said representations were made with the intent to induce the Defendants to rely and act upon such representations and to perform some act which they otherwise would not do?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

f. Do you find from a preponderance of the evidence that such representations as you have found in your response to this question were made by James M. Malone with malice? In connection with this question, you are instructed that malice is such gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse.

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

QUESTION NO. 17.

a. Do you find from a preponderance of the evidence that James M. Malone made representations that the agreements in question conferred or involved rights, remedies and obligations which the agreements did not have or involve?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

b. Answer this question if, but only if, you have answered "We do" to part (a) of this question. Otherwise, skip to Question No. 18.

From a preponderance of the evidence do you find that the above representations were false?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

Answer the following subsections of this question if, but only if, you have answered "We do" to part (a) and (b) of this question. Otherwise, skip to Question No. 18.

c. From a preponderance of the evidence, do you find that James M. Malone knew the above representations were false or made said representations recklessly without any knowledge of truth and as a positive assertion?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

d. Do you find from a preponderance of the evidence that the Defendants, Haile, Jones, Gill and Fowler reasonably relied and acted upon the representations you have found in answer to the foregoing question?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

e. From a preponderance of the evidence do you find that the said false representations were made with the intent to induce the Defendants to rely and act upon such representations and to perform some act which they otherwise would not do?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

f. Do you find from a preponderance of the evidence that such representations as you have found in your response to this question were made by James M. Malone with malice? In connection with this question, you are instructed that malice is such gross indifference to the rights of another as will amount to a willful or wanton act done intentionally and without just cause or excuse?

Answer "We do" or "We do not".

ANSWER <u>WE DO</u>

QUESTION NO. 18.

Do you find from a preponderance of the evidence that D.E. McDonald adopted and ratified the representations and acts of James M. Malone in connection with the transactions with the Defendants?

You are instructed in connection with this question that by the term "ratify" or "ratification" is meant the adoption by one party of the unauthorized acts of another party done on behalf of the first party. A party may ratify the unauthorized acts of another if, with full knowledge of the facts, he accepts benefits arising from the transaction.

Answer "He did ratify" or "He did not ratify".

ANSWER WE DO

QUESTION NO. 19.

Do you find from a preponderance of the evidence that D.E. McDonald adopted and ratified the representations and acts of Leslie C. Hackler in connection with the transactions with the Defendant?

You are instructed in connection with this question that by the term "ratify" or "ratification" is meant the adoption by one party of the unauthorized acts of another party done on behalf of the first party. A party may ratify the unauthorized acts of another if, with full knowledge of the facts, he accepts benefits arising from the transaction.

Answer "He did ratify" or "He did not ratify."

ANSWER WE DO

QUESTION NO. 20.

Answer this question if, but only if, you have answered "We do" to parts (a), (b), (c) (d) and (e) (that is, "we do", to each and every one of those subparts) to any one or more of the questions numbered 14 through 17 inclusive. Otherwise, proceed directly to the last page of this charge.

Do you find from a preponderance of the evidence that the conduct you have found in response to the Questions 14 through 17 inclusive or any one of them, caused any damage or injury to the Defendant Haile, Jones, Gill and Fowler?

Answer "We do" or "We do not".

ANSWER WE DO

QUESTION NO. 21.

Answer this question if, but only if, you have answered "We do" to Question No. 20, otherwise, proceed to the last page of this charge.

Find from a preponderance of the evidence that amount, if any, which you find represents the damages to the Defendants, Haile, Jones, Gill, and Fowler. You are instructed that in connection with your answer to this question, you are to consider only the following elements:

Damage Element 1: The fair market value of the business, assets, and property which were surrendered by the Defendants. "Fair market value" as used in this instruction is the amount of money a person desiring to sell, but not bound to do so, could, within a reasonable time procure for such property from a person who desires and is able to buy, but is not bound to purchase the property.

Damage Element 2: The Defendants' liabilities, if any, to creditors of H & J Food Baskets, the partnership, or Minit, Inc. for which the Defendants' remain liable.

Answer in dollars and cents, if any.

ANSWER $1,844,839.00

QUESTION NO. 22.

Answer this question if, but only if, you have answered "We do" to parts (a), (b), (c), (d) and (e) (that is "We do" to each and every one of those sub-parts) of any one or more of the questions numbered 14 through 17 inclusive. Otherwise, proceed to the last page of this charge.

Do you find from a preponderance of the evidence that James M. Malone, D.E. McDonald, and Leslie C. Hackler conspired to convert the assets of the partnership of the Defendants, Haile and Jones, known as H & J Food Baskets, and the corporation known as Minit, Inc. by the use of the representations which you have found in response to Question 14 through 17 inclusive?

In connection with this question you are instructed that a conspiracy is a combination of two or more persons, by concerted

action, to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means. One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator. A "conspiracy to defraud" means a common purpose, supported by concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has the purpose. Conspiracy, as that term is used in this instruction, may be shown by concerted action or other facts and circumstances from which the natural inference arises that unlawful overt acts were committed in the furtherance of the common design, intention or purpose of the alleged conspirators. It is not required that each and every act of a conspirator be shown to have been in concert with others, or that it be established by direct evidence that all combined at a given time prior to each transaction, and inferences of concerted action may be drawn from joint participation in transactions and from joint enjoyment of fruits of transactions. You are instructed further that to convert money or property to one's own use means to apply, appropriate or use such money or property for the benefit or profit of the person in question without the consent of the owner.

Answer "They did conspire" or "They did not conspire".

ANSWER THEY DID CONSPIRE

QUESTION NO. 23

Answer this question if, but only if, you have answered Question No. 22 "They did conspire".

What do you find from a preponderance of the evidence to be the highest fair market value of the business, assets, and property of the Defendants which you have found to have been surrendered between the date of surrender and the date of trial?

In connection with this question you are instructed that fair market value is the amount of money a person desiring to sell, but not bound to do so, could, within a reasonable time procure for such property from a person who desires and is able to buy, but is not bound to purchase the property.

Answer in dollars and cents, if any.

ANSWER $2,200,000.00

QUESTION NO. 24.

Answer this question if, but only if, you have answered "We do" to part (f) of any one or more of Questions 14 through 17 inclusive.

Find from a preponderance of the evidence what sum of money, if any, should be awarded to Defendants Haile, Jones, Gill, and Fowler as exemplary damages.

In answering this question, you are instructed that exemplary damages means an amount you may in your discretion award as an example to others or as a penalty or by way of punishment in addition to any other damages you may have found in response to questions submitted to you.

Answer in dollars and cents, if any.

ANSWER $100,000.00