**In re Emma Jane NIX a/k/a Jane Nix d/b/a Dallas Title Company of Rowlett and Janix.**

**John ZERVAS, et al., Plaintiffs,**

**v.**

**Emma Jane NIX, Defendant.**

**Bankruptcy No. 387–33136–M–7.**

**Adv. No. 387–3913.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 26, 1988.

Tod B. Edel, Dallas, Tex., for plaintiffs.

Elizabeth A. Bates, Dallas, Tex., for defendant.

## AMENDED MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROBERT McGUIRE, Chief Judge.

On May 13, 1988 came on to be heard the Motion for Summary Judgment filed by Plaintiffs against Debtor Emma Jane Nix (hereinafter referred to as "Debtor" or "Defendant") to determine that Plaintiffs' claims against Debtor are nondischargeable, as a matter of law, based on the judgment rendered upon a jury verdict by

the United States District Court for the Northern District of Texas, Dallas Division in *John Zervas, et. al. v. Spencer Blain and Jane Nix*, Civil Action No. CA3–84–0238–G, under § 523(a)(2)(A) and § 523(a)(6) of the Bankruptcy Code. Although written in narrative form, this memorandum opinion and order contains the Court's findings of undisputed facts and conclusions of law. The court has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(I).

On February 16, 1984, Plaintiffs filed a lawsuit styled *John Zervas, et al. v. D.L. Faulkner, et al*, Civil Action No. CA3–84–0238–G, in the United States District Court for the Northern District of Texas, Dallas Division.

The underlying District Court proceeding arises out of a civil RICO case brought by an investor builder of condominiums in the I–30/Lake Ray Hubbard area of Dallas County, Texas against two of the alleged principal participants in an alleged real estate fraud scheme, Jane Nix and Spencer Blain. In the District Court suit, plaintiffs allege that Empire Savings & Loan Association of Mesquite, Texas ("Empire") was at the heart of a racketeering enterprise with which Nix and Blain and their co-conspirators associated and participated between 1982 and 1984. In 1984, the Federal Savings & Loan Insurance Corporation closed Empire. Blain was the Chief Executive Officer and major stockholder of Empire during the period of activity complained of in the District Court suit, to wit, alleged fraudulent lending activity that fueled construction of condominiums in the I–30/Lake Ray Hubbard area. Nix owned and operated the title company which closed almost all the allegedly fraudulent transactions.

On March 24, 1987, after an almost three week trial, an unanimous jury returned a verdict against the Debtor/Defendant Jane Nix and Defendant Spencer Blain. The jury found that the Defendants had violated the civil RICO statute, conspired to violate the civil RICO statute, engaged in a civil conspiracy to defraud plaintiffs, and willfully defrauded plaintiffs in a transaction involving real estate under Section 27.01 of the Texas Business and Commerce Code.

Based on these findings, the jury determined that Debtor and Blain had proximately caused actual damages to plaintiffs for each of these counts and the jury found both actual and punitive damages against the Defendants and $450,000 for plaintiffs' reasonable and necessary attorney's fees in preparing for and trying the case. On March 27, 1987, United States District Court Judge A. Joe Fish entered Final Judgment for plaintiffs in the amount of $6,450,000, plus post-judgment interest, based on the jury's verdict.

The District Court judgment was timely appealed to the United States Court of Appeals for the Fifth Circuit, argument for which was heard. The summary judgment record indicates that no decision has been rendered on the appeal by the Fifth Circuit.

On June 8, 1987, Debtor filed for protection under Chapter 7 of the United States Bankruptcy Code, in the Northern District of Texas, Dallas Division, in the above numbered and styled case. Plaintiffs' filed their Complaint Objecting to Dischargeability of Debt on September 15, 1987.

Plaintiffs' have moved for summary judgment in this action based upon the District Court judgment.

In support of their motion for summary judgment, plaintiffs submitted the ten volume transcript of the trial testimony. They argue that the judgment rendered by the Federal District Court mentioned herein collaterally estops the Debtor from contesting the non-dischargeability of her judgment debt to plaintiffs under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). Correctly stated, the issue presently before the Court on Plaintiff's motion for summary judgment is whether the Debtor is collaterally estopped from contesting the facts found in and established by the District Court judgment which are to be considered by the bankruptcy court in its determination of the dischargeability of that debt.

Bankruptcy courts have exclusive jurisdiction to determine bankruptcy discharge-

ability issues. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The Supreme Court in *Brown* held that a bankruptcy court is not barred by res judicata from determining, independent of a state-court judgment against the debtor, the nature of a debt to determine its dischargeability, and found that in making that determination, "the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceeding when considering the dischargeability of respondent's debt, . . . ." In *Brown* however, the Supreme Court clearly distinguished between the application of res judicata and the application of collateral estoppel:

> This case concerns res judicata only, and not the narrower principle of collateral estoppel. Where res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit. [Citations omitted.] If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of Sec. 17 [of the former Bankruptcy Act; similar to section 523 of the present Bankruptcy Code], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

*Brown,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.

■ However, although the bankruptcy court in dischargeability actions under § 523(a) ultimately determines whether or not a debt is dischargeable, the doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability. The law in this Circuit has been enunciated in *In re Shuler,* 722 F.2d 1253, 1255 (5th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984) "that collateral estoppel—arising from an earlier non-bankruptcy suit's determination of subsidiary facts that were actually litigated and necessary to the decision—may properly be invoked by the bankruptcy court to bar relitigation of those issues, even though

the bankruptcy court retains the exclusive jurisdiction to determine the ultimate question of the dischargeability under federal bankruptcy law of the debt, upon the facts so based and other evidence before the court." See also *In re Allman,* 735 F.2d 863 (5th Cir.1984); *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981), (that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts).

In *Shuler,* the Fifth Circuit instructed that when determining whether a subsidiary fact should be foreclosed by the prior suit, the court should look to the entire record supporting the prior judgment. *Shuler,* 722 F.2d at 1256 n. 3 (quoting *Spilman,* 656 F.2d at 228). The *Shuler* court cautioned that the prior record must be sufficiently detailed to enable the bankruptcy court to ascertain the subsidiary facts that were actually litigated and necessarily determined by the prior court. If the prior record sufficiently established the subsidiary facts on which the judgment was based, the court then independently determines whether these subsidiary facts establish the elements of nondischargeability as defined by federal bankruptcy law. See *In re McCall,* 76 B.R. 490 (Bankr.E.D. Pa.1987); *In re Eller,* No. 386–3243, slip op. (Bankr.N.D.Tex.1988); *In re Dean,* 79 B.R. 659 (Bankr.N.D.Tex.1987) (The bankruptcy court should resort to the record in a prior proceeding to determine the wrongful character of the act).

Applying *Brown,* a number of circuit courts have held that collateral estoppel may be applied in dischargeability cases *In re Shuler,* 722 F.2d 1253 (5th Cir.1984), *cert denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984); *In re Poston,* 735 F.2d 866 (5th Cir.1984); *In re Halpern,* 810 F.2d 1061 (11th Cir.1987); *In re Wallace,* 840 F.2d 762 (10th Cir.1988); *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir. 1987); *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *In re Latch,* 820 F.2d 1163

(11th Cir.1987).[1]

As an initial inquiry, in order to be accorded collateral estoppel effect, the judgment must contain detailed facts sufficient as findings to meet the federal test of nondischargeability and enable the bankruptcy court to discern from the record the subsidiary facts upon which the allegations of fraud were made. *In re Poston,* 735 at 869; *In re Shuler,* 722 F.2d at 1257–58; *In re Allman,* 735 F.2d at 865.

In the present case, an examination of the jury instructions and verdict in the federal district court action clearly reveals the subsidiary facts which were found as predicates for the jury's answers and findings. The court finds that the judgment contains sufficient factual detail on which the court can decide the § 523(a) actions to bar dischargeability which are at issue in the present proceeding.

■ Because the judgment to which collateral estoppel effect is sought to be given is a federal court judgment, federal law determines whether collateral estoppel effect would be appropriate. *United States v. MONKEY,* 725 F.2d 1007 (5th Cir.1984). *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241 (5th Cir.1983). Under federal law, collateral estoppel may be applied to a trial court finding even while the judgment is pending on appeal. *Southern Pacific Communications Co. v. American Telephone & Telegraph,* 740 F.2d 1011 (D.C.Cir.1984).

■ In this circuit, the test for applying the doctrine of collateral estoppel requires that (i) the issue to be precluded must be identical to that involved in the prior action,

(ii) in the prior action the issue must have been actually litigated, and (iii) the determination made of the issue in the prior actions must have been necessary to the resulting judgment. *Shuler,* supra at 1256, n. 2 [citing *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 151 (5th Cir. 1981)]; *In re McDonald,* 73 B.R. 877 (Bankr.N.D.Tex.1987).[2]

■ In the present case, the District Court judgment, the jury's verdict upon which it is based and the record from the District Court trial are presently before the court and into which the bankruptcy court must inquire to determine whether the above test is satisfied.

As to the second and third prongs of the inquiry into whether collateral estoppel is appropriate, it is clear from the jury issues and answers and the trial record that the facts in question were actually litigated and that such facts were necessary to the final judgment.

As to the first element, that the issues involved in the prior suit be identical to those of the present proceedings, an examination of the jury issues and answers is necessary.

The jury instructions required separate answers/findings as to each of five independent claims: (i) a claim for violation of Title 18, United States Code, section 1962(c), the Racketeer Influenced and Corrupt Organization Act ("RICO"); (ii) a claim for violation of Title 18, United States Code, section 1962(d), of RICO, for conspiracy to violate section 1962(c) of RICO; (iii) a claim for civil conspiracy to

---

1. Compare *In re Rahm,* 641 F.2d 755, 757 (9th Cir.1981) *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981) in which the Ninth Circuit holds, that because of the bankruptcy courts' exclusive jurisdiction in determining dischargeability, a prior state court judgment has no collateral estoppel force on a bankruptcy court considering dischargeability, but may establish a prima facie case of nondischargeability.

2. The four part analysis set forth *In re Church,* 69 B.R. 425 (Bankr.N.D.Tex.1987) for determining the applicability of giving a non-bankruptcy judgment collateral estoppel effect in a dischargeability proceeding is as follows:

(1) whether courts of the state whose court rendered the subject decision would apply collateral estoppel in a subsequent case,
(2) whether the record meets the federal test for the application of collateral estoppel,
(3) whether the prior non-bankruptcy trial was conducted without a view to predetermine dischargeability issues, and
(4) whether each component of the judgment debt should be excepted from discharge.
Under the *Church* inquiry, the first and second elements would be satisfied by a determination that the federal test for collateral estoppel had been met.

defraud the plaintiffs; (iv) a claim for committing common law fraud on the plaintiffs, and (v) a claim under section 27.01 of the Texas Business and Commerce Code for fraud in a transaction involving real estate or stock as defined thereunder.

As to the questions asked under Claim One which made findings relevant to this proceeding, the jury affirmatively found that Debtor committed two or more acts constituting a "pattern of racketeering activity", that through Debtor's racketeering activities, as found, Defendant was conducting or participating in the conduct of an enterprise (Jury Charge, p. 19), and that plaintiffs, or any of them, were injured in their business or property by reason of Debtor's operation of the enterprise through a pattern of racketeering activity (Jury Charge, pp. 23 & 48).

The jury was instructed that the definition of "pattern of racketeering activity" required two or more acts of racketeering activity, the predicate acts being mail fraud, in violation of 18 U.S.C. § 1341, wire fraud, in violation of 18 U.S.C. § 1343 and commercial bribery, in violation of TEX. PENAL CODE ANN. section 32.43. In particular, the jury was instructed that to find mail or wire fraud, the jury must find that Defendants obtained money or property by means of false or fraudulent pretenses, representations or promises and that such was done willfully and knowingly.[3] As the jury was instructed in summation:

3. As to Mail and Wire Fraud, the jury was instructed as follows:

Section 1341 of Title 18, United States Code, the mail fraud statute, provides in part that: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, [shall be guilty of an offense against the laws of the United States.]

To establish that Blain or Nix committed mail fraud, plaintiffs must prove by a preponderance of the evidence:

*First:* That Blain or Nix willfully and knowingly devised, or willfully and knowingly joined and participated in, a scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations or promises; and

*Second:* Than Blain or Nix or a co-participant used the United States Postal Service by mailing, or by causing to be mailed, some matter or thing for the purpose of executing the scheme to defraud.

Section 1343 of Title 18, United States Code, the wire fraud statute, provides in pertinent part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice [shall be guilty of an offense against the laws of the United States.].

To establish that Blain or Nix committed wire fraud, plaintiffs must prove by a preponderance of the evidence:

*First:* That Blain or Nix willfully and knowingly devised, or willfully and knowingly joined and participated in, a scheme or artifice to defraud, or for obtaining money or property by means of false pretenses, representations or promises; and

*Second:* That Blain or Nix or a co-participant transmitted or caused to be transmitted by wire communication writings or sounds for the purpose of executing the scheme to defraud....

... A statement or representation is "false" or "fraudulent" within the meaning of the mail or wire fraud statutes if it relates to a material face and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact with intent to defraud. A "material fact" is a fact that would be important to a reasonable person in deciding whether to engage or not to engage in a particular transaction ...

... The word "knowingly" means that the act was done voluntarily and intentionally and not because of mistake or accident.

The word "willfully" means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

Question No. 1: "Do you find that either defendant each committed two (2) or more acts constituting a pattern of racketeering activity?"

Ans: Nix—YES

Jury Charge, pp. 14–18.

... a scheme to defraud under the mail fraud statute means some plan to procure money or property by means of false pretenses or representations calculated to deceive persons of ordinary prudence. Thus, plaintiffs must prove that Blain or Nix knowingly and willfully joined and participated in such plan, and that such representations were made by at least one of them, or their agents, knowing they were false, and with intent to defraud plaintiffs. (Jury Charge, p. 17.)

*Plaintiff's § 523(a)(6) Claim*

Pursuant to § 523(a)(6), a debt "for willful and malicious injury by the debtor to another entity ..." is not dischargeable. Plaintiff has sought that the jury's findings as Claims One and Two, and the damages for injuries awarded thereto, be declared nondischargeable under § 523(a)(6). The instructions to the jury defining the predicate acts necessary for finding RICO fraud under Claim One required a finding that such acts were committed "willfully and knowingly." In the instructions "knowingly" was defined as meaning "... done voluntarily and intentionally ..." and "willfully" was defined as meaning "... voluntarily and purposely, with the specific intent to do something the law forbids; ... with

bad purpose either to disobey or disregard the law." (Jury Charge, p. 17).

The standard for a § 523(a)(6) exception to discharge for "willful and malicious" injury in this circuit is that "willful" means intentional and "malicious" adds the absence of just cause or excuse. *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245 (5th Cir.1983); *Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.,* 783 F.2d 480, 486 (5th Cir.1986); *In re Dean,* 79 B.R. 659 (Bankr.N.D.Tex.1987).[4]

The factual findings supporting the prior judgment are based upon a preponderance of the evidence. As did the court in *In re McDonald, supra,* this court has analyzed the numerous cases involving the appropriateness of affording collateral estoppel effect to non-bankruptcy judgments based on the "preponderance" standard to support a non-dischargeability claim where clear and convincing evidence is required.[5] In most cases, including those decisions by the Fifth Circuit, the courts do not mention any need to reconcile the varying burdens of proof in order to give collateral estoppel effect to the prior judgment.

The differences in the burden of proof employed in the prior and present proceedings should not serve as an insurmountable obstacle to the affording the factual determinations in the prior judgment collateral estoppel effect.[6] The Court in *In re Mc-*

---

**4.** The "malicious" element of § 523(a)(6) does not require ill will or specific intent to do harm. *Perkins v. Scharffe,* 817 F.2d 392 (6th Cir.1987), *cert denied* — U.S. —, 108 S.Ct. 156, 98 L.Ed. 2d 112 (1987); *In re Franklin,* 726 F.2d 606 (10th Cir.1984); *In re Dean,* 79 B.R. 659 (Bankr.N.D. Tex.1987).

**5.** In *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988), the Fourth Circuit has held that the standard of proof necessary to establish an exception to discharge under § 523 is not higher than the preponderance standard normally applied in civil proceedings in that the Bankruptcy Code is silent as to the requirement of a higher standard of proof. The Fourth Circuit expressly recognized the value of "fresh start" in stating that "[a]lthough the 'fresh start' philosophy of bankruptcy law requires that exceptions to discharge 'be confined to those plainly expressed,' ... this policy does not justify judicial imposition of a heavier burden of proof on creditors seeking to have a debt determined nondischargeable under 523(a)(6)." *Id.* at 116.

Following *Combs* is *In re Daboul,* 85 B.R. 197 (Bankr.D.Mass.1988) (burden of proof for § 523(a)(2) is preponderance of evidence). See also *In re Baiata,* 12 B.R. 813 (Bankr.E.D.N.Y. 1981) (burden of proof for § 523 action is preponderance of evidence); *In re Stephens,* 26 B.R. 389 (Bankr.W.D.Ky.1983) (burden of proof in § 523 action is preponderance of evidence).

**6.** Likewise, as enunciated by the Fourth Circuit in *Combs v. Richardson,* the court's affording preclusive effect to the earlier judgment furthers several important interests:

(i) Judicial resources are always conserved by avoiding duplicative relitigation of identical issues (ii) The application of the bar ensures that parties will eschew the piecemeal presentation of their case (iii) The earlier trial was necessarily closer in time to the disputed events (iv) Given the unique value of a jury's ability to weigh the testimony of witnesses and to resolve disputed questions of fact, a jury's factual determinations have a particular credibility and are entitled to great deference

*Donald,* in finding that the factual determinations made in a prior judgment under the "preponderance" standard were sufficient as findings on which the Bankruptcy Court could determine nondischargeability, noted "... [that] the [Court] cannot employ a purely technical distinction between evidentiary standards to undo a fully litigated judgment." [7]

The ten volume transcript of the prior proceeding has been offered to the Court as well as the jury instructions and answers. In responding to the summary judgment, Debtor was afforded an opportunity to point out to the court any portion of the prior statement of facts and judgment which she found as not supported by the evidence or any mitigating or contradictory matters that may have appeared therein. Any evidence that Debtor had that would have indicated that issue preclusion should not apply in the present proceedings should have been presented at that time. *In re Halpern,* 810 F.2d 1061, 1066 n. 6; *In re McDonald,* 73 B.R. at 882.

Based on the instructions on which the jury found its answers, the jury findings for Claim One are the same as the facts which would be considered as "willful and malicious" under § 523(a)(6) and collateral estoppel should properly be afforded those factual determinations made.[8]

Under its § 523(a)(6) claim, plaintiff has prayed to have declared non-dischargeable the entire judgment debt of $6,450,000,

which represents the actual damages found, of $2,000,000, trebled under 18 U.S.C. § 1964(c), plus attorneys' fees of $450,000. § 523(a)(6) does not contain the limiting language present in § 523(a)(2)(A) which restricts the debt excepted from discharge to "the extent obtained" by fraud. Where willfulness and malice exist, then compensatory and punitive damages flowing therefrom are non-dischargeable under § 523(a)(6). *In re Adams,* 761 F.2d 1422 (9th Cir.1985); *In re Dean, supra* at 663; *In re Siefke,* 61 B.R. 220 (Bankr.D.Mont. 1986); *Combs v. Richardson, supra* at 117; *In re Coover,* 70 B.R. 554 (Bankr.S.D.Fla. 1987).

Based on a review of the state court record, the jury charge and judgment thereon, the Court is satisfied that this is a proper case for the application of collateral estoppel and that the Debtor is estopped from contesting the factual basis for excepting this judgment debt, in its entirety, from discharge pursuant to § 523(a)(6).

### *Plaintiff's § 523(a)(2)(A) Claim*

Defendant argues that the jury finding, in Claim Four of the Jury Charge, that no common law fraud was committed demonstrates that the issues presently before the court, as to the facts to be considered under a § 523(a)(2)(A) action, are not identical to the issues addressed in the jury's verdict.[9]

To the extent that the jury has made inconsistent findings, such inconsistency

(v) The presentation of the evidence and testimony in a full trial may well be more thorough than in an evidentiary hearing. *Combs,* 838 F.2d at 115.

**7.** In analyzing the third prong of the *Church* test, the Court in *McDonald* found no indication that the claimants conducted the prior trial with a view to anticipate the dischargeability issue and that collateral estoppel could be applied to factual determinations made in the prior hearing on the "preponderance of evidence" standard. The facts presently in issue parallel those discussed in *McDonald* in that it appears that the prior trial was not conducted with a view toward a possible dischargeability question and that the findings supporting the prior judgment are not precluded from having collateral estoppel effect simply because they were made under a "preponderance" burden of proof. Therefore, under the *McDonald* application of the *Church* test, the third prong has been satisfied.

**8.** Various bankruptcy courts considering the burden of proof have concluded that in the absence of an express requirement in the state for a "clear and convincing" standard, the burden of proof for a § 523(a)(6) claim is "preponderance of the evidence." *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *In re Dubian,* 77 B.R. 332, 338–39 (Bankr.D.Mass.1987); *In re Shepherd,* 56 B.R. 218 (W.D.Va.1985); *In re Boren,* 47 B.R. 293 (Bankr.W.D.Ky.1985), clarified 50 B.R. 315 (Bankr.W.D.Ky.1985).

**9.** A finding of common law fraud, as instructed in Claim Four of the Jury Charge, required that the following five elements be found:

(i) that a material misrepresentation was made to plaintiffs;

(ii) that the person who made the misrepresentation knew it was false at the time it was made or made it recklessly, without any knowledge of its truth, and as a positive assertion;

does not effect the applicability of collateral estoppel to independent factual determinations made therein. *United States v. Merida,* 765 F.2d 1205, 1220 (5th Cir.1985) (Inconsistency in a verdict is not fatal) [10].

Debtor contends that it is essential to a holding of nondischargeability under § 523(a)(2)(A) that the Debtor personally receive money, property or services as a result of misrepresentations made to the creditor, citing *Matter of Gebhart,* 53 B.R.

(iii) that the misrepresentation was made with the intention that it be relied upon by plaintiffs;
(iv) that the plaintiffs justifiably acted in reliance upon the misrepresentation; and
(v) that the plaintiffs were injured as a result of their reliance on the material misrepresentation.
"You are instructed that a 'misrepresentation' is a statement that is not true. A 'material' fact is one which relates to a matter of some importance or significance as opposed to a minor or trivial detail. Ordinarily, a promise to do something in the future cannot be the basis of a claim for fraud unless the one making the promise did so without a present intent to perform it or with a positive intent not to perform it. Similarly, the mere expression of an opinion does not constitute a basis for a claim of fraud unless the party making such statement has exclusive or superior knowledge of facts inconsistent with such statement.
To do something intentionally is to do it knowingly and voluntarily, and not because of accident or mistake. Such intent may be determined from all the facts and circumstances surrounding the case.
Fraud does not exist if a misrepresentation did not induce the plaintiffs to act in reliance on it. Unless a merial misrepresentation actually induced or caused the plaintiffs to act, they may not recover damages for fraud. If, in the exercise of reasonable care for the protection of their own interests, plaintiffs could have ascertained the truth of the matter by making a reasonable inquiry or investigation under the circumstances presented, but failed to do so, then it cannot be said that they "justifiably" relied upon such misrepresentation.
You are instructed that the plaintiffs must prove that they were injured as a result of their reliance on the material misrepresentation. In other words, their reliance must have been the proximate case of their damages, if any ...
Question No. 11: Do you find that either defendant, in connection with a transaction with plaintiffs, misrepresented a material existing fact to plaintiffs:
  Ans: Nix—NO
Question No. 12: Do you find that either of the defendants knew or reasonably should have known of the falsity of any misrepresentation at the time it was made; or that either of the

49, 51 (Bankr.M.D.Fla.1985) and *In re Lamb,* 28 B.R. 462, 464 (Bankr.W.D.La. 1983).

In the present case, it would be appropriate to give collateral estoppel effect to the jury's factual determinations, pursuant to Claims One and Five, that Debtor made false pretenses, false representations and committed statutory fraud.[11] *In re Suter,* 59 B.R. 944 (Bankr.N.D.Ill.1986) (where the court stated that the elements of fraud

defendants made such a misrepresentation in reckless disregard of its truth or falsity
  Ans: Nix—NO
Question No. 13: Do you find that either of the defendants intended to induce the plaintiffs to rely and act upon their misrepresentation(s)?
  Ans: Nix—NO
Question No. 14: Do you find that plaintiffs justifiably relied and acted upon any misrepresentation(s) of either defendant?
  Ans: Nix—NO"
(Jury Charge, pp. 36–42).

10. The Fifth Circuit, in *U.S. v. Merida* cited *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), another criminal case in which the Supreme Court quoted Justice Holmes in *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) that:

Consistency in the verdict is not necessary. Each count in the indictment is regarded as if it was a separate indictment ... If separate indictments had been presented against the defendant ... and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. (citations omitted).
*Powell,* at 62–63, 105 S.Ct. at 475–76.

11. On Claim 5, the jury has also found that defendant has committed fraud, as defined by § 27.01 of the Texas Business and Commerce Code in Claim Five (Jury Charge, pp. 44–46). The jury instruction for Claim Five is as follows:

Plaintiffs' fifth claim is asserted under section 27.01 of the Texas Business and Commerce Code. This act is a state statute which provides in relevant part as follows:
(a) Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a
(1) false representation of a past or existing material fact, when the false representation is
(A) made to a person for the purpose of inducing that person to enter into a contract; and
(B) relied on by that person in entering into that contract; or

encompassed in that District Court's findings of fraud under RICO were identical to those required for a finding of nondischargeability under § 523(a)(2)(A); *but see* footnote 5 thereof and footnote 9 herein).

Debtor's assertion that under § 523(a)(2)(A) perhaps no monies were obtained by Debtor need not be further addressed herein due to the Court's finding that the entire judgment debt is determined to be non-dischargeable pursuant to § 523(a)(6).

(2) false promise to do an act, when the false promise is
(A) material
(B) made with the intention of not fulfilling it;
(C) made to a person for the purpose of inducing that person to enter into a contract; and
(D) relied on by that person in entering into that contract.
(The Charge definition as to § 27.01(a)(2) above (jury charge p. 44) appears sufficient under § 523(a)(2)(A) for purposes of any false promise. Arguably the definition in § 27.01(a)(1) (charge p. 44) does not specifically ask whether Debtor knew such representation was false or made same recklessly without any knowledge of its truth and as a positive assertion *In re Jones,* 50 B.R. 911, 918 (Bankr.N.D. Tex.1985). However, the jury's answer to Question 17, below, may supply any omission in Question 16.
Question No. 16: Do you find that, in the 1982 real estate transaction with the plaintiffs, either of the defendants committed fraud, as defined in section 27.01(a):
Ans: Nix—YES
Question No. 17: Do you find that either of the defendants willfully committed the fraud that you have found to exist in your answer to Question No. 16?
Ans: Nix—YES (Jury Charge, pp. 44–46).
Question No. 22: What sum of money, if paid now in cash, do you find would fairly and reasonably compensate the plaintiffs for actual damages proximately caused by either defendant's violation of § 27.01 of the Texas Business and Commerce Code?
Ans: $1,000,000. (Jury Charge, p. 52).