**In the Matter of: William W. MARTIN, Sr., Debtor.**

**Philip R. SYLVESTER and National Flour Company of Wisconsin, Inc., Plaintiffs,**

**v.**

**William W. MARTIN, Sr., Defendant.**

**Bankruptcy No. 89 B 9796.**
**Adv. No. 89 A 842.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 5, 1991.

Michael Polsky, Trebon & Polsky, Milwaukee, Wis., Douglas Lipke, Keck, Mahin & Cate, Chicago, Ill., for plaintiffs.

Bernard Kaplan, Ruben, Kaplan & Rosen, Skokie, Ill., for debtor-defendant.

## MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENTS

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor–Defendant moved for summary judgment on both Counts I and II of the Adversary Complaint, and Plaintiffs moved for that relief on Count I. For reasons set forth herein, both motions are denied.

The dispute arises over pre-petition federal court judgments which Plaintiffs Philip R. Sylvester ("Sylvester") and National Flour Company of Wisconsin, Inc. ("National Flour") (collectively, the "Plaintiffs") obtained against Debtor William W. Martin, Sr. ("Debtor"). Plaintiffs filed this Adversary case seeking to have those judgment debts totalling $146,024.06 declared nondischargeable under Sections 523(a)(2) and (a)(6) of the U.S. Bankruptcy Code ("Code"), Title 11 U.S.C. Sylvester argues that Debtor is collaterally estopped from contesting nondischargeability of the judgment Sylvester obtained against him, because that judgment was based on elements identical to those which are used to make a nondischargeability determination under § 523(a)(2).

Debtor opposes collateral estoppel by arguing that he is permitted to offset monies allegedly owed to him. He also seeks summary judgment on National Flour's claim in Count II that its judgment against Debtor is nondischargeable.

Apart from moving papers and briefs, the parties filed affidavits and statements pursuant to Local District Rule 12(l) and (m), which has been adopted as a Rule of the Bankruptcy Court.

## UNCONTESTED FACTS

In January 1983, Sylvester and Debtor formed National Flour, a wholesale distributor of baking products. Sylvester owned 50% of the National Wisconsin stock. Shortly after its formation, National Flour encountered problems in obtaining shipped product on credit from Bay State Milling Company ("Bay State"), a seller of baking goods and supplies for resale. Sometime in August of 1983, Sylvester and Debtor each executed a revocable personal guaranty to Bay State for full and prompt payment of National Flour's indebtedness. Bay State resumed shipments.

In February 1985, Sylvester agreed to buy the remaining 50% share of National Flour from Debtor for $40,000. Sylvester claims that at the time of agreement, Debtor represented to Sylvester that (1) the financial statements Debtor gave to Sylvester pertaining to the company were true; and (2) National Flour had received a $10,000 credit from the Internal Revenue Service and that all of its taxes through December 31, 1984 had been paid. Under the agreement, an initial payment of $20,000 was delivered, but the stock was never actually transferred and the balance of the purchase price was never tendered.

When Sylvester took control of the business, he soon realized that National Flour's financial picture was not as secure as he says Debtor had led him to believe. He accused Debtor of stripping National Flour of funds so as to benefit another company controlled by Debtor. Among numerous

debts facing National Flour was an outstanding balance of $411,943.68 due Bay State.

On March 1, 1985, after agreeing with Sylvester to sell his shares in National Flour, Debtor purportedly sent a letter to Bay State revoking his guaranty of National Flour's indebtedness. However, Bay State denied receiving Debtor's letter. The last shipment from Bay State to National Flour apparently occurred on October 9, 1985, so Bay State claimed that Debtor owed the entire National Flour debt pursuant to his guaranty.

In August of 1985, Bay State sued Debtor, Sylvester, and National Flour for the unpaid balance plus interest in the United States District Court for the Eastern District of Wisconsin (the "District Court"). Sylvester and National Flour admitted liability to Bay State, and cross-claimed against Debtor for conversion. In their cross-claim Sylvester and National Flour also alleged that Debtor had made certain misrepresentations which induced Sylvester to join in forming, and later buy Debtor's stock in, National Flour.

The amended cross-claim of Sylvester and National Flour against Debtor in the District Court pleaded three grounds for relief: (1) that Debtor made various misrepresentations to Sylvester; (2) that Debtor failed to repay National Flour a certain loan in the amount of $124,288.15; and, (3) that Debtor fraudulently transferred and converted $70,025.79 from National Flour to another company and refused to repay it. Debtor denied liability and also contested the amounts sought.

The District Court granted summary judgment in favor of Bay State on the issue of Debtor's liability as a co-guarantor. The Court ruled that Debtor was liable for National Flour's obligations pursuant to his guaranty to Bay State. A jury trial was subsequently held, but its scope was limited to damages arising from Debtor's guaranty to Bay State, and issues relating to the cross-claims against Debtor.

The jury responded to a special verdict form, and determined that: (1) Bay State was due $447,528.36 from Debtor (Verdict No. 7); (2) Debtor's purported letter revoking the guaranty was never received by Bay State (Verdict No. 1); (3) Debtor made an unspecified misrepresentation to Sylvester (Verdict No. 8) that Sylvester had reasonably relied on (Verdict No. 9); and, (4) Debtor had converted $25,998.25 from National Flour (Verdicts 19 and 20). The jury also found that Sylvester had suffered actual damages in the amount of $50,000 by reason of the misrepresentation (Verdict No. 10) and awarded punitive damages in the amount of $70,025.79 (Verdict No. 21). A copy of the jury's Special Verdict was submitted as Exhibit D to Sylvester's Motion, and that is appended hereto and incorporated as a further statement of uncontested facts. On the jury verdict, the court awarded judgment for Sylvester and against Debtor for $50,000 in actual damages and $70,025.79 in punitive damages. National Flour was awarded $25,998.22 for the conversion. Bay State won judgment against Debtor for $447,528.36. The judgment order entered on August 17, 1988 read in pertinent part:

IT IS ORDERED AND ADJUDGED that the plaintiff, Bay State Milling Company, did not receive a letter from defendant, William W. Martin, Sr., dated March 1, 1985, in which defendant, William W. Martin, Sr., provided written notice of his revocation of his guaranty. That judgment be entered in favor of plaintiff, Bay State Milling Company, and against defendant, William W. Martin, Sr., in the sum of $447,528.36, with interest thereon as provided by law.

That defendant, William W. Martin, Sr., made an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce cross-claim plaintiff Philip R. Sylvester to act upon it. That judgment be entered in favor of cross-claim plaintiff Philip R. Sylvester, and against cross-claim defendant, William W. Martin, Sr., in the sum of $50,000.00 for his loss of the bargain, with interest thereon as provided by law. Further, that judgment be entered in favor of cross-claim plaintiff Philip R. Syl-

vester and against cross-claim defendant, William W. Martin, Sr., in the sum of $70,025.79 as punitive damages, with interest thereon as provided by law.

That cross-claim defendant, William W. Martin, Sr., committed a conversion of property belonging to cross-claim plaintiff National Flour Company of Wisconsin, Inc. That judgment be entered in favor of cross-claim plaintiff National Flour Company of Wisconsin, Inc., and against cross-claim defendant, William W. Martin, Sr., in the sum of $25,998.27 for the damages which it sustained as a result of the conversion.

This judgment has since been affirmed. *Bay State Milling Co. v. Martin,* 916 F.2d 1221 (7th Cir.1990).

Bay State, however, did not take judgment against either Sylvester or National Flour.

While the District Court suit was pending, Debtor sued Sylvester and his wife in a Wisconsin state court. On October 24, 1986, Debtor was awarded a judgment of $20,000 in that suit, and Sylvester does not dispute its validity here. The latter judgment was not paid.

Nor did Debtor pay the judgment against him. He filed his voluntary Chapter 11 bankruptcy petition on June 13, 1989. The bankruptcy proceeding was later converted to one under Chapter 7 of the Bankruptcy Code on August 24, 1990.

Sylvester and National Flour filed this Adversary proceeding seeking judgment that the entire District Court judgment against Debtor is nondischargeable under Code § 523(a)(2) (Count I by Sylvester) and (a)(6) (Count II by National Flour) because of his alleged fraudulent acts. Sylvester's Motion for Summary Judgment seeks that relief as to Count I.

Debtor asserts under 11 U.S.C. § 553 a right to setoff against the claims of both Sylvester and National Flour, claiming a $223,764.18 debt which they allegedly owe to him. Sylvester argues that Debtor is collaterally estopped from contesting dischargeability of the judgment Sylvester obtained against him, because that judgment was based on elements identical to those used to make a determination of nondischargeability under 11 U.S.C. § 523. Debtor opposes Plaintiff's motion on the ground that he is permitted to offset his claims against any monies which he might owe to them. Debtor also moves for summary judgment on the claims of Plaintiff under 11 U.S.C. § 523(a)(6).

Additional undisputed facts are contained in the discussion hereinbelow.

## JURISDICTION

United States District Courts have subject matter jurisdiction over cases arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. §§ 1334(a) and (b). Each District Court is authorized to refer such proceedings to the Bankruptcy Judges for the District. 28 U.S.C. § 157(a). The United States District Court for the Northern District of Illinois has made such a referral pursuant to Local Rule 2.33.

In a core proceeding that arises in or under Title 11, a Bankruptcy Judge has jurisdiction to hear and determine the proceeding and issue final orders and judgments. 28 U.S.C. § 157(a). A proceeding to determine the dischargeability of a debt is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## SUMMARY JUDGMENT STANDARDS

■ Under Federal Rule of Civil Procedure 56(e) (Bankruptcy Rule 7056), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine

issue of material fact in dispute. *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n,* 806 F.2d 146, 149 (7th Cir.1986). On a summary judgment motion, inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355–56. However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The primary difference between the two motions is procedural; summary judgment motions are usually made before the trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. In determining whether the evidence is sufficient, the court must consider the substantive evidentiary standard that would be applicable at trial. *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), *cert. denied* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

■ A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motions, and must identify those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. However, once the motion for summary judgment is made and supported as described above,

Rule 56(e) provides that a party opposing the motion may not rest upon the mere allegations or denials in his pleading, his response must demonstrate specific facts showing a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

■ The Court should not "weigh the evidence." However, "[i]f evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Valley Liquors,* 822 F.2d at 659.

■ When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is not a genuine issue for trial and summary judgment should be granted. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

### CROSS MOTIONS FOR SUMMARY JUDGMENT

■ Although both parties argue for summary judgment, that does not by itself indicate that there is not genuine issues of material fact; the court must rule on each motion separately in determining whether each judgment may be entered in accordance with applicable principles. *ITT Indus. Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987) (Shadur, J.); *District 12, United Mine Workers v. Peabody Coal, Co.,* 602 F.Supp. 240, 242 (S.D.Ill.1985). *See* C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (2d ed. 1983 & Supp.1987). Cross-motions for summary judgment do not require the court to decide the case on those motions; the court can deny both motions if both parties have failed to meet the burden of establishing no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *ITT,* 674 F.Supp. at 1331; *Wolf v. Maryland Casualty Co.,* 617 F.Supp. 456, 458 (S.D.Ill. 1985).

## PARTIAL SUMMARY JUDGMENT

■ Rule 56(d), F.R.Civ.P., involves situations in which the motion does not lead to a judgment on the entire case but only terminates further contest on a portion of the litigation. Because Rule 56(d) is part of the rule entitled "Summary Judgment," the order prescribed by this rule has been referred to as "Partial Summary Judgment." C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2737 (2d ed. 1983 & Supp.1987). However, partial Summary Judgment is not allowed unless it disposes entirely of one or more of the counts of the complaint, or the entire complaint. *Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216 (7th Cir.1946); *Capitol Records, Inc. v. Progress Record Distributing Inc.*, 106 F.R.D. 25, 28 (N.D.Ill.1985) (Getzendanner, J.).

## DISCUSSION

### I

### SETOFF UNDER 11 U.S.C. § 553

#### (a) *Introduction.*

Debtor claims he is entitled to offset monies allegedly owed by Plaintiffs against their purportedly nondischargeable claims. He argues that Sylvester as a co-guarantor owes one-half of the $447,528.36 Bay State judgment on the guaranty, or $223,764.18. This amount in addition to the $20,000 judgment outstanding from Debtor's state court lawsuit against Sylvester and his wife, if offset against Sylvester's claim of $120,025.79, would exceed Sylvester's claim by $123,738.39, thus defeating Sylvester's nondischargeability complaint. Debtor infers that the same theory applies to National Flour's claim of $25,998.27.

Sylvester concedes that Debtor can offset the $20,000 judgment won in state court against Sylvester's claim of $120,025.79. However, Sylvester and National Flour dispute Debtor's claim to setoff based on amounts allegedly owing on the guaranty given to Bay State. Plaintiffs argue that no mutuality of debt exists on the guaranty, thus preventing Debtor from asserting any right to setoff.

■ Section 553 of the Code incorporates and preserves the right of setoff available at common law. *United States v. Norton*, 717 F.2d 767, 772 (3d Cir.1983). "Setoff" is a counterclaim or cross-claim demand which a defendant holds against a plaintiff, arising out of a transaction extrinsic to the plaintiff's cause of action. *Zweck v. DP Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921, 925 (1975). This state law doctrine has long been incorporated into bankruptcy law. *In the Matter of Elcona Homes Corporation*, 863 F.2d 483, 485 (7th Cir.1988). However, Section 553 does not create any new right to setoff when none exists under other applicable nonbankruptcy law. *In re Rozel Industries, Inc.*, 120 B.R. 944, 948 (Bankr.N.D.Ill.1990). Rather, § 553 merely recognizes the setoff doctrine, and adds some additional restrictions. *Elcona*, 863 F.2d at 484–85; *Rozel*, 120 B.R. at 948. Section 553(a) recognizes the setoff doctrine with the exceptions identified in §§ 553(a)(1) through (3) and § 553(b).[1]

---

**1.** Section 553(a) provides in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

(A) after the commencement of the case; or

(B)(i) after 90 days before the date of the filing of the petition; and

(ii) while the debtor was insolvent; or

(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor.

(b)(1) Except with respect to a setoff of a kind described in section 2362(b)(6), 362(b)(7), 362(b)(14), 365(h)(2), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the

## (b) *Setoff as a Defense.*

Section 558 of the Code provides that the estate has the benefit of any defense available to debtor. 11 U.S.C. § 558. Although the precise language of § 553(a) allows a creditor to offset debts owed by that creditor against monies owed by the debtor, courts have also recognized the debtor's right to assert setoff as a defense under § 558. *In re Papercraft Corp.*, 126 B.R. 926 (Bankr.W.D.Pa.1991); and *In re Nasr*, 120 B.R. 855 (Bankr.S.D.Tex.1990). However, Debtor may claim a right to setoff only to the extent that Wisconsin law recognizes it. *In re Standard Furniture Co.*, 3 B.R. 527 at 531 (Bkrtcy.S.D.Cal.1980); *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (property interests are created and defined by state law).

■ Wisconsin law recognizes that a party may counterclaim based upon setoff. *See* Wis.Stat. § 802.07(1) (1989–90) ("A defendant may counterclaim any claim which the defendant has against a plaintiff, upon which a judgment may be had in the action.") In addition, Wisconsin courts have long recognized a right to setoff both in equity and at law. *Zweck v. D.P. Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921, 925 (1975) (setoff is purely statutory in nature); *In re Seybold's Estate*, 223 Wis. 192, 270 N.W. 87 (1936); *Seligmann v. Heller Bros. Clothing Co.*, 69 Wis. 410, 34 N.W. 232 (1887) (facts and circumstances justified an equitable setoff of judgments); *Piotrowski v. Czerwinski*, 138 Wis. 396, 120 N.W. 268 (1909) (equitable setoff permitted whenever justice requires it, even if not within statute of setoffs).

■ In this proceeding, Debtor raises setoff as a defense to the Plaintiffs' complaint, not as a counterclaim. Raising setoff as a defense is consistent with the rules of federal procedure. *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) (contrary state provision is disregarded if a federal civil rule speaks to the issue). Debtor's asserted defense of setoff is also consistent with Wisconsin civil procedure. Wis.Stat. § 802.02(3) and (4); *see Schneeberger v. Dugan*, 261 Wis. 177, 52 N.W.2d 150 (1952) (sufficiency of setoff pleading will not be determined on a motion for summary judgment). Consequently, Debtor may claim setoff as a defense in this Adversary proceeding.

## (c) *Requirement of Mutuality.*

In analyzing the doctrine of setoff, courts have scrutinized its application in light of the goals and objectives of bankruptcy. Few will dispute that the orderly reorganization of debtors is one objective of Chapter 11. *In re Public Service Co.*, 884 F.2d 11, 13 (1st Cir.1989). Also, the equitable treatment of creditors is a goal Congress intended to achieve through an orderly bankruptcy process. *Boston and Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562, 566 (7th Cir.1986) (discussing inequity of preferring one creditor over other creditors of the same class "because of the happenstance" of mutual obligations).

Analyzing the apparent conflict between setoff and equal treatment, the Seventh Circuit has explained that a narrow application of the setoff doctrine would achieve both bankruptcy goals. *Elcona*, 863 F.2d at 484. It has been found that allowance of setoff is a matter within the bankruptcy judge's discretion, *In re Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir.1990), but only to be allowed within the parameters of applicable state law. *Bevill*, 896 F.2d 54 (§ 553 incorporates and preserves in bankruptcy law the right of setoff available at common

---

trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

(c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

law); *Durham v. SMI Industries Corp.*, 882 F.2d 881 (4th Cir.1989) (§ 553 does not create right of setoff nor prescribe means by which it must be executed in order to be effective; it merely preserves any right of setoff accorded by state law, subject to certain limitations). Thus, this Court must look to Wisconsin law in order to determine Debtor's setoff rights.

Wisconsin courts require that mutual debts and credits must exist between the parties for the purpose of allowing setoff. *In re Estate of Demos*, 50 Wis.2d 262, 184 N.W.2d 117, 121 (1971); *In re Estate of Vicen*, 1 Wis.2d 193, 83 N.W.2d 664, 666 (1957). Similarly, setoff under § 553 of the Code requires that there be a mutuality of obligations. *In re Rozel Industries, Inc.*, 120 B.R. 944, 949 (§ 553 requires that (1) the claim and debt be mutual, and (2) each arose before the commencement of the case); *In re Cloverleaf Farmer's Coop*, 114 B.R. 1010, 1016 (Bankr.S.D.1990); *In re Communicall Central, Inc.*, 106 B.R. 540, 545 (Bankr. N.D.Ill.1989) (§ 553 requires debts to be mutual and pre-petition); *L.P. Maun, M.D., Ltd. v. Salyapongse*, 105 B.R. 464, 468 (S.D.Ill.1989); *In re Brooks Farms*, 70 B.R. 368, 371 (Bankr.E.D.Wis.1987).

The meaning of the term "mutual debts" has been addressed by the Wisconsin Supreme Court. In *Mattek v. Hoffmann*, 272 Wis. 503, 76 N.W.2d 300 (1956), the court stated that: "Mutual debts, in the purview of a statute of setoff, are not merely those which are owing, but those which are due and payable, on each of which the cause of action has accrued and exists at the same time ..." *Id.* 76 N.W.2d at 302. Thus, mutuality requires that liability exist between the same parties, standing in the same capacity.

Similarly, the U.S. Courts of Appeal have held that debts are mutual under Code § 553 if they are between the same parties, standing in the same capacity. *In re Davidovich*, 901 F.2d 1533 (10th Cir.1990); *In re Bevill, Bresler & Schulman Asset Mgmt.*, 896 F.2d 54, 59 (3rd Cir.1990); *In re Public Service Co.*, 884 F.2d 11 (1st Cir.1989); *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030 (5th Cir.1987). "As a general rule, for mutuality to exist, each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally." 4 Collier on Bankruptcy ¶ 553.04, at 553.30 (15th ed. 1985). "To be mutual then, the parties must have full and concurrent rights against each other." *In re V.N. De Prizio Construction Co.*, 52 B.R. 283, 287 (Bankr.N.D.Ill.1985) (Eisen, C.J.).

This characterization does not require the debts to arise from the same transaction. *Davidovich*, 901 F.2d at 1537; *Braniff*, 814 F.2d at 1035; *Waldron v. Farmers Home Admin.*, 75 B.R. 25 (N.D.Tex.1987). The test for mutuality of obligations requires simply that something must be owed by both sides. *Elcona*, 863 F.2d at 487; *Bevill*, 896 B.R. at 57; *In re Art Metal U.S.A., Inc.*, 109 B.R. 74, 78 (Bankr.D.N.J.1989); *Maun*, 105 B.R. at 470. As the First Circuit succinctly stated, a pre-petition mutual obligation is "a debt which arose prior to commencement of the bankruptcy case, is owed by Creditor A to Debtor, while at the same time Creditor A has some claim against Debtor which likewise arose prior to commencement of the bankruptcy case." *Public Service*, 884 F.2d at 14.

Debtor is therefore entitled to setoff Sylvester's $120,025.79 judgment against him with the $20,000 judgment awarded Debtor in his state court lawsuit against Sylvester and his wife. Sylvester concedes the mutuality of those debts, both of which are undisputed and pre-petition.

However, the remainder of Debtor's claim against Sylvester does not constitute a mutual obligation for setoff purposes.

(d) *Exoneration does not create mutuality.*

The partial record of the District Court proceeding presented as part of the Summary Judgment Motions here shows that National Flour, Sylvester, and Debtor were liable to Bay State prior to the filing of Debtor's bankruptcy petition. Following trial held on Plaintiffs' cross-claim in that

case, the jury awarded Sylvester damages totalling $120,025.79, which award constitutes a valid and enforceable claim here against Debtor. However, the debt which Debtor asserts is owed to him from Sylvester, in addition to the $20,000 state court judgment, is not evident.

Debtor argues that Sylvester's debt to him arises from Debtor's right to exoneration. Exoneration is a proceeding in equity which permits a guarantor to be relieved from paying his co-guarantors' share of the debt by requiring the co-guarantors to pay the creditor. 11 Williston on Contracts pp. 843, 875–79 (3d ed. 1957 & Supp.1990); 38 Am.Jur.2d § 130.5, p. 260 (Supp.1990); Annotation, *Right to Compel Cosurety to Pay Share*, 38 A.L.R.3d 680 (1971 & Supp. 1990). Debtor asserts that exoneration entitles him to collect from Sylvester 50% of the $447,528.36 judgment awarded Bay State. Debtor concludes that offsetting this amount ($223,764.18) against Sylvester's claim of $120,025.79 would render Sylvester's complaint moot.

Sylvester responds that Bay State's judgment against Debtor has not yet created a debt which Sylvester owes to the Debtor. Sylvester argues that until and unless Debtor pays the full amount of the judgment, he will not be entitled to any amount from Sylvester.

Debtor's claim that exoneration creates a mutual debt for setoff purposes fails for two reasons. First, Debtor has failed to establish a right to exoneration under Wisconsin law. Second, Debtor misconstrues the doctrine.

First, the principle of exoneration, under which a co-guarantor is exonerated by requiring other co-guarantors to pay their respective share of liability to the creditor, is typically invoked in suretyship relationships. Only a minority of states have allowed the doctrine to be applied to guaranty relationships.[2] Debtor has not cited any Wisconsin cases supporting application of the exoneration doctrine to a situation involving liability on a guaranty. A party who makes an argument unsupported by authority runs the risk of forfeiting the argument. *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986). The Court has found no reported Wisconsin decision that has acknowledged a co-guarantor's right to exoneration on a guaranty.[3]

Second, even if Wisconsin law were to apply the doctrine of exoneration in co-guarantor situations, Debtor's argument still lacks merit. Debtor misconstrues the doctrine since he argues that Sylvester owes him one-half the judgment due Bay State. Exoneration of a co-guarantor requires the other co-guarantors to pay their share of liability to the creditor, relieving that co-guarantor of any liability owing to the creditor beyond his share. 11 Williston on Contracts pp. 875–79; 38 Am.Jur.2d § 130.5, p. 260; Annotation, *Right to Com-*

---

2. *See* Annotation, *Right to Compel Cosurety to Pay Share*, 38 A.L.R.3d 680, 685, for a list of states allowing exoneration of co-guarantors; *see also* 38 Am.Jur.2d, *Guaranty*, § 130.5, p. 260.

3. In cases involving co-guarantors, Wisconsin courts have recognized the right to indemnification, *In re Koch's Estate*, 148 Wis. 548, 134 N.W. 663 (1912), and contribution, *In re Bitker's Estate*, 251 Wis. 538, 30 N.W.2d 449 (1947). However, neither doctrine is available to Debtor.

The doctrine of "indemnification," for example, shifts the loss from one person who has been compelled to pay it to another who on the basis of equitable principles should bear the loss. *Swanigan v. State Farm Ins. Co.*, 99 Wis.2d 179, 299 N.W.2d 234 (1980). Debtor is precluded from seeking indemnification from Sylvester because Debtor has paid nothing on the Bay State judgment, thus there is no loss to shift.

Similarly, the doctrine of "contribution" requires the actual payment of the judgment. When two or more persons have bound themselves as co-guarantors, each of them, as between themselves, is required to bear a ratable proportion of the amount for which they are liable under the contract guaranty. In this proceeding, Debtor and Sylvester are each liable for one-half of the $447,528.36 Bay State judgment, or $223,764.18, individually. In the event that one has paid more than his share of the sum, he is entitled to payment or "contribution" from the other co-guarantor. *In re Bitker's Estate*, 251 Wis. 538, 30 N.W.2d 449 (1947). Debtor has paid nothing on the Bay State judgment, thus Debtor is entitled to nothing from Sylvester by way of contribution. Only after Debtor has paid an amount in excess of $223,764.18 will he be entitled to seek payment or contribution from Sylvester as to that amount exceeding Debtor's share.

*pel Cosurety to Pay Share*, 680, 685 § 3 *et seq.* The doctrine of exoneration therefore would require Sylvester to actually pay more than 50% of the total liability to Bay State.

Thus, no mutual debt is owing to Debtor from Sylvester, other than the $20,000 state court judgment. Debtor has not demonstrated any additional reciprocal debt which Sylvester owes him.

### (e) *Setoff asserted against National Flour.*

In the District Court litigation, the jury awarded judgment to National Flour and against Debtor in the amount of $25,998.27, after finding that Debtor had converted or wrongfully transferred funds belonging to National Flour. Debtor now asserts that this judgment against him is subject to setoff. He argues that "[t]he same legal principles noted aforesaid in connection with the $120,025.79 claim of Sylvester are likewise applicable here." That sentence is his complete argument.

■ Generally, to assert a setoff in bankruptcy a claim or debt must be found to be absolutely owing at the time of filing the bankruptcy petition. "This does not necessarily require that the amount of such item be specifically known or that it be currently due, only that some definite liability has accrued." *Rozel*, 120 B.R. at 949; *see also In re NTG Industries, Inc.*, 103 B.R. 195 at 197 (Bkrtcy.N.D.Ill.1989); *Mattek*, 76 N.W.2d at 302.

■ In the current proceeding, National Flour admitted liability to Bay State on or about October 22, 1986. At that time, Debtor's liability to pay Bay State for the benefit of National Flour was also established. Until Debtor actually pays Bay State, he appears to have no claim against National Flour and no debt to offset against National Flour's claim. Debtor has not shown that National Flour owes a debt to him. Thus, no mutuality of debt exists. Moreover, as previously explained, the doctrine of exoneration fails to create the mutuality that the Debtor needs to claim a setoff.

## II

### COLLATERAL ESTOPPEL

#### (a) *Introduction.*

■ In his Motion for Summary Judgment, Sylvester asserts that collateral estoppel precludes any defense against his Count I claim under § 523(a)(2) for nondischargeability of the compensatory ($50,000) damage award against Debtor. Sylvester argues that there are no genuine issues of material fact as to whether judgment on that award meets the elements of § 523(a)(2) because the doctrine of collateral estoppel bars relitigation of factual issues already determined by the jury in the *Bay State* proceeding. Relitigating the same issues between the same parties is barred by collateral estoppel, *E.I. DuPont de Nemours & Co. v. Union Carbide Corp.*, 250 F.Supp. 816, 819 (N.D.Ill.1966), in order to conserve judicial resources, prevent inconsistent decisions by encouraging reliance on prior dispositions, and alleviate the cost and vexation of multiple lawsuits. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980).

■ Bankruptcy courts have exclusive jurisdiction to determine dischargeability issues. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). While the bankruptcy court decides whether a debt is dischargeable, the doctrine of collateral estoppel has been invoked to foreclose relitigation of certain facts underlying the determination of dischargeability. In *Klingman v. Levinson*, 831 F.2d 1292, 1294–95 (7th Cir.1987), the court found that "[w]here a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments." *Id.* at 1295; *see also Cohen v. Bucci*, 905 F.2d 1111 (7th Cir.1990).

The *Klingman* court outlined four elements that must be met in order for the collateral estoppel doctrine to be applied: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actual-

ly litigated; (3) the determination must have been essential to the final judgment; and, (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Klingman*, 831 F.2d at 1295.

■ To insure that the elements of collateral estoppel have been sufficiently satisfied for purposes of a dischargeability proceeding, the Bankruptcy Court must usually look to the entire record of the proceeding, not just the judgment. *In re Tapper*, 123 B.R. 594, 600 (Bankr.N.D.Ill. 1991). Unlike *Tapper*, in which the parties stipulated to a transcript of and all exhibits admitted in a state court proceeding, the parties here have not submitted any transcript of the District Court proceeding. However, the parties here have submitted a partial trial record consisting of the District Court judgment, and the jury instructions and jury findings leading up to that judgment.

Courts have often relied upon jury instructions, findings and verdicts in determining that the elements of collateral estoppel have been met for purposes of a dischargeability hearing. *See In re Wade*, 26 B.R. 477, 483 (Bankr.N.D.Ill.1983) (in which the court found that the issues to be determined under § 523(a)(2)(A) were "identical to the items outlined by the jury instructions"); *In re Nix*, 92 B.R. 164, 167 (Bankr.N.D.Tex.1988) ("an examination of the jury instructions and verdict in the federal district court action clearly reveals the subsidiary facts which were found as predicates for the jury's answers and findings. The court finds that the judgment contains sufficient factual detail on which the court can decide the § 523(a) actions to bar dischargeability which are at issue in the present proceeding"); *In re Christian*, 111 B.R. 118, 121 (Bankr.W.D.Tex.1989) ("The jury's findings on Special Issue No. 4 alone support a finding of nondischargeability"); *In re Jolly*, 124 B.R. 365, 367 (Bankr.M.D.Fla.1991) (in which the court examined an instruction which was given to the jury in the state court proceeding, and summarily concluded that the issue of fraud under § 523(a)(2)(A) was "the same in the state court litigation").

The jury instructions and findings presented here are of sufficient detail to enable this Court to discern the basis upon which the judgment of intentional misrepresentation was rendered. The jury instructions and findings are sufficient to satisfy the Court's inquiry as to whether the factual issues in the *Bay State* proceeding were actually litigated, were essential to the judgment, and were identical to the factual issues which need to be resolved in a nondischargeability case brought under § 523(a)(2).

(b) *The judgment for $50,000 in compensatory damages should be given collateral estoppel effect for purposes of the inquiry under § 523(a)(2).*

Sylvester has moved for summary judgment based upon the District Court's jury instructions under Wisconsin law and the special jury findings regarding Plaintiffs' cross-claim on the guaranty. Sylvester contends that jury findings No. 8 and No. 21, and the accompanying jury instructions by the District Judge, satisfy the elements under § 523(a)(2) and accordingly render the award for compensatory damages nondischargeable.

§ 523(a)(2) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial statement.

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

To bar dischargeability under § 523(a)(2), a creditor must establish by a preponderance of the evidence[4] that: (1) the debtor made a representation; (2) at the time the representation was made the debtor either knew it was false or made it with such reckless disregard for the truth as to constitute willful misrepresentation; (3) the representation was made with the intent to deceive; (4) the creditor reasonably relied on the misrepresentation; and, (5) the creditor suffered loss as a result of the misrepresentation. *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *In re Kyriazes,* 38 B.R. 353, 354 (Bankr.N.D.Ill.1983). The elements of § 523(a)(2) mirror the requirements for proof of common law fraud. *In re Kanak,* 85 B.R. 483, 488 (Bankr. N.D.Ill.1988).

The District Judge instructed the *Bay State* jury on the issue of intentional fraud under Wisconsin law as follows:

> The elements of an intentional deceit misrepresentation in Wisconsin are, first, that the defendant made a representation of fact, second, that the representation was untrue, third, that the representation was made knowing it to be untrue or recklessly not caring whether it was true or false, fourth, that the representation was intended to deceive plaintiff and make plaintiff act to plaintiff's pecuniary damage, and fifth, that the plaintiff believed that representation to be true and relied upon it. Wis.J.I.Civil sec. 2401 (1969).

The court further instructed the jury that Sylvester had to establish that Debtor committed intentional misrepresentation by "clear, satisfactory, and convincing" evidence, a burden of proof exceeding that required under § 523. *See Grogan,* 111 S.Ct. at 660.

Finally, the jury answered "yes" to each of the following special verdict interrogatories:

> Did William W. Martin, Sr. make an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce Philip Sylvester to act upon it? (No. 8)

> In view of all of the evidence ... did Philip Sylvester believe the representation to be true and justifiably rely on it to his pecuniary damage? (No. 9)

In comparing the elements of § 523(a)(2) with the above jury instructions and findings, it becomes apparent that the issues to be determined under § 523(a)(2) are identical to the issues outlined in the jury instructions and findings. The jury instructions and findings establish that Debtor made a false representation to Sylvester, and that he did so either knowingly or recklessly without caring whether the representation was true or false. The jury instructions and findings also establish that Debtor made a false representation with the intent to deceive Sylvester, and that Sylvester "justifiably," or reasonably, relied upon it. The damages awarded by the District Judge, in addition to his instruction to the jury that it must find Debtor's misrepresentation was made "to make plaintiff act to plaintiff's pecuniary damage," demonstrate a finding that Sylvester suffered pecuniary loss as a result of his reliance. Because the factual issues which Sylvester seeks to preclude here are the same as those decided by the jury in the *Bay State* proceeding, the first element of collateral estoppel has been met. *See also Nix,* 92 B.R. at 167 ("As to the first element, that the issues involved in the prior suit be identical to those of the present proceeding, an examination of the jury issues and answers are necessary").

The factual issues now before this Court were also actually litigated in the *Bay State* proceeding, and their determination was necessary to the eventual decision in *Bay State.* First, the jury instructions and subsequent jury findings reveal that the issues sought to be precluded were actually litigated by the parties. The jury could not have awarded damages against Debtor without reaching each element for intentional misrepresentation outlined in both the jury instructions and special verdict interrogatories Nos. 8 and 9, found to be identical to the elements necessary for a

---

4. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991) (a creditor need only prove the elements under § 523 by a preponderance of the evidence).

finding of nondischargeability under § 523(a)(2). It appears that Debtor was fully represented by counsel in the District Court, and that a full hearing was held on the issues pertinent here. The situation most clearly contemplated by the "actually litigated" standard is "the resolution of a dispute following a full trial on the merits." *Brill v. Dvorak*, 118 B.R. 619, 624 (Bankr. N.D.Ill.1990). Clearly, the relevant factual issues were fully litigated on the merits in the *Bay State* action. *See also In re Raynor*, 922 F.2d 1146, 1149 (4th Cir.1991), citing *Long v. West*, 794 F.2d 928 (4th Cir.1986) ("Examination of the [jury] instructions, the verdict, and the divorce decree showed that the parties litigated the issue [which was before the bankruptcy court in a dischargeability hearing]....").

Determination of such issues was also essential to the judgment rendered in *Bay State*. The judgment order entered at the close of the trial read in pertinent part:

That defendant, William W. Martin, Sr., made an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce ... Sylvester to act upon it.

Clearly the jury's findings on the issues was the basis for that judgment. *See Jolly*, 124 B.R. at 368 ("The requirement [of necessity] is likewise met as the verdict rendered by the jury in the state court proceeding necessarily included a finding of fraud which was a critical and necessary part of the judgment"); *Nix*, 92 B.R. at 167 ("... it is clear from the jury issues and answers ... that the facts in question were actually litigated and that such facts were necessary to the final judgment").

▮▮ Finally, it is undisputed that the judgment rendered in *Bay State* is final for collateral estoppel purposes. There was no indication that "the District Court verdict was intended to be provisional or subject to change or modification in the future by the same tribunal. There is [also] no evidence that issues previously decided can be liti-

gated anew in any litigation pending in the same tribunal." *See Wade*, 26 B.R. at 484. In addition, there is no appeal pending;[5] indeed, the Seventh Circuit has affirmed the judgment in *Bay State*.

As Debtor points out, the Circuit opinion found only two of the nine claims of misrepresentation contained in the jury instructions were actionable. However, that does not prevent this Court from applying collateral estoppel to the District Court order. The Circuit court in *Bay State* found that the District Court had erred in its general instruction to the jury that it need only find that Debtor had made "one or more of the following misrepresentations of fact." *Bay State*, 916 F.2d at 1229. That general instruction in effect allowed the jury to find that any one of nine claims constituted fraudulent misrepresentation. The Circuit court concluded, however, that the instructions did not result in reversible error. Two of the nine statements qualified as misrepresentations under Wisconsin law:

(b) that the financial statements which he gave to Philip R. Sylvester were true and correct;

(c) that all tax obligations of National Flour Company of Wisconsin, Inc., through December 31, 1984, had been paid and that the corporation had a $10,000 credit with the IRS;

*Id.* at 1229.

Similarly, here it is irrelevant which specific misrepresentation of fact, of those two found qualified by the Circuit opinion, the jury found to warrant award of damages. It is enough that the jury found, according to the elements contained in the instructions, that a misrepresentation had been made by Debtor and that such misrepresentation warranted an award of compensatory damages to Sylvester. Such jury finding was found sufficient in the Circuit opinion to affirm judgment and this Court may not question that ruling here. Since that ruling confirms a judgment based on the same elements as 11 U.S.C. § 523(a)(2), that is critical to the issues now presented. Count I of the Adversary Complaint does

---

5. Even if there were an appeal pending, it is well established under Illinois law that the pendency of an appeal does not suspend the operation of a judgment as collateral estoppel.

*See Tapper*, 123 B.R. at 601–02 (in which this Court examined Illinois law and found that a state court judgment was final for collateral estoppel purposes despite an appeal therefrom).

not specify whether it is brought under § 523(a)(2)(A) or (B), nor does the motion for summary judgment. The first of the two representations quoted above would fall under § 523(a)(2)(B), the second under § 523(a)(2)(A). The Circuit Court was satisfied that evidence permitted the jury to find that one or both of those misrepresentations were made. It is not necessary for this Court to know which of those two were found by the jury, or if both were found. A finding of either or both would satisfy § 523(a)(2).

Compare *In re Tobman,* 107 B.R. 20 (S.D.N.Y.1989) where the plaintiff pleaded specifically under § 523(a)(2)(A). There, the court did need to know which of several misrepresentations was the basis for a prior jury verdict of fraudulent inducement. Two of those representations regarded Debtor's financial condition, and such representations could not cause the jury award to be nondischargeable pursuant to § 523(a)(2)(A). Plaintiffs' pleadings in this case are not so narrowly drawn.

The requirements for collateral estoppel have been met here. Debtor is therefore barred from relitigating the same issues which were decided by the jury in the *Bay State* proceeding.

Debtor did not submit to this Court any rebuttal affidavits or other materials under Local District Rule 12(m) in defense of the motion for summary judgment. Debtor's only defense to that Motion is a legal argument based upon his alleged right to setoff against the *Bay State* judgment. As shown above, that defense is without merit. Thus, in the absence of any genuine issue of material fact, the Court finds the elements required for nondischargeability under § 523(a)(2) to be satisfied as a matter of law. Sylvester's Motion for Summary Judgment with respect to nondischargeability of the $50,000 in compensatory damages, is therefore allowed.

(c) *The judgment for $70,025.79 in punitive damages should not be given collateral estoppel effect for purposes of inquiry under § 523(a)(6).*

■ In his Motion for Summary Judgment, Sylvester also contends that there are no genuine issues of material fact as to whether the District Court judgment for $70,025.79 in punitive damages meets the elements of § 523(a)(6). Sylvester again asserts that the doctrine of collateral estoppel bars relitigation of relevant factual issues already determined by the jury in the *Bay State* proceeding.

Section 523(a)(6) includes in its list of debts which are nondischargeable

debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6).

The District Judge instructed the *Bay State* jury on the issue of punitive damages as follows:

If you find that William W. Martin, Sr. acted either maliciously or in wanton, willful, or reckless disregard of Philip R. Sylvester's rights, you may award punitive damages.

The jury in *Bay State* awarded Sylvester $70,025.79 in punitive damages, which award was reflected in the judgment later entered by the District Court.

In comparing the elements of § 523(a)(6) with the jury instructions, there is some resemblance between the issues to be determined under § 523(a)(6) and the issues addressed in the jury instructions. However, those issues are not identical.

Section 523(a)(6) requires that in order for damages to be nondischargeable, the debtor must have acted both "maliciously" *and* "willfully." 11 U.S.C. § 523(a)(6). In contrast, the jury instructions provided that punitive damages could be awarded if the jury found that Debtor had acted "either maliciously *or* in a wanton, willful, *or* reckless disregard of ... Sylvester's rights." Thus, the jury instructions allowed the jury to award punitive damages even in the absence of a finding of malice or willfulness on the part of Debtor. Both findings are necessary in order for a debt to be deemed nondischargeable under § 523(a)(6).

■ The term "willful and malicious" means more than reckless disregard. *In re Compos,* 768 F.2d 1155, 1157 (10th Cir. 1985). Pursuant to instructions, the *Bay State* jury could have awarded punitive damages even if Debtor's misrepresenta-

tion had been the result of mere "reckless disregard" of Sylvester's rights. Thus, the jury instructions are insufficient evidence as to whether the $70,025.79 in punitive damages was awarded because Debtor acted "maliciously and willfully," which would cause them to be nondischargeable, or because Debtor acted with "reckless disregard," which would not cause them to be nondischargeable.

Thus, the issues to be determined under § 523(a)(6) are not identical to the issues outlined in the jury instructions. Sylvester is therefore precluded from asserting the doctrine of collateral estoppel with regard to nondischargeability of his punitive damages. Evidence other than the jury instructions and record presently before this Court is required to enable determination whether Debtor acted both maliciously and willfully, as required for determination of nondischargeability under § 523(a)(6). There being significant issues of material fact, the Court denies the Motion for Summary Judgment regarding the nondischargeability of the $70,025.79 in punitive damages under § 523(a)(6).[6]

(d) *Significant material facts preclude Debtor's summary judgment on § 523(a)(6) claim.*

 Debtor's cross motion for summary judgment suggests that the jury actually considered and rejected any contention that Debtor's conversion of National Flour's property was "willful and malicious" as required by § 523(a)(6). As discussed earlier, that provision excepts from discharge any debt of the debtor due to "willful and malicious injury by the debtor to another entity or to the property of another entity ..." 11 U.S.C. § 523(a)(6). The term "willful" means a deliberate or intentional act, *In re Iaquinta*, 95 B.R. 576, 581 (N.D.Ill.1989), and "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987). Thus, the term "willful and malicious" means something more than reckless disregard or mere

negligence. *In re Compos*, 768 F.2d 1155, 1157 (10th Cir.1985). However, the debtor need not act with ill will or malevolent purpose toward the injured party. *In re Guy*, 101 B.R. 961, 982 (Bankr.N.D.Ind. 1988). The phrase "willful and malicious injury" encompasses "willful and malicious conversion." *In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981).

 Debtor, as the moving party on his motion, carries the burden of establishing which factual and legal issues were actually litigated and determined. *Cohen v. Bucci*, 103 B.R. 927 (N.D.Ill.1989).

In the trial before the District Court involving the guaranty, the jury awarded National Flour $25,998.27 for Debtor's conversion or wrongful transfer of National Flour's funds. The jury instruction on the issue of conversion stated:

A conversion is committed by a person who without consent of the owner takes property of another in such a way that it seriously interferes with the right of the owner to control the property permanently or for an indefinite period of time. Before you may find that William W. Martin, Sr. committed conversion of money belonging to National Flour of Wisconsin, Inc., you must find the following:

1. That William W. Martin, Sr. intentionally took money belonging to National Flour Company of Wisconsin, Inc.

2. That William W. Martin, Sr. took the money without the consent of the owner or without lawful authority; and

3. That William W. Martin Sr.'s act with respect to the money seriously interfered with the right of National Flour Company of Wisconsin, Inc. to possess the money.

*Wrongful or unlawful intent is not an element of conversion. Thus, it is not necessary that William W. Martin, Sr. knew that National Flour of Wisconsin, Inc. was entitled to possession of the money or that he intended to interfere with National Flour of Wisconsin, Inc.'s possession.* It is simply enough that William W. Martin, Sr. intended to deal with the property in a way

---

6. Accordingly, there is no need to reach the legal question of whether punitive damages are in fact nondischargeable under § 523(a)(6), but

this Court has ruled that they may be. *Brill v. Dvorak*, 118 B.R. 619 (Bankr.N.D.Ill.1990).

that would seriously interfere with National Flour of Wisconsin, Inc.'s possession. Thus, a person may be liable for conversion where he has exercised control over property even though he may be unaware of the existence of the rights with which he interferes. (Emphasis supplied.)

Based on this instruction, the jury answered "yes" to the following question (Special Verdict No. 19):

Did William W. Martin, Sr. commit a conversion of property belonging to National Flour Company of Wisconsin, Inc., that is, wrongfully transfer funds?

■ The instruction did not tell the jury to find, and it did not find, whether or not Debtor's conduct was "willful and malicious," as required under 11 U.S.C. § 523(a)(6). Indeed, the instructions told the jury that "[w]rongful or unlawful intent is not an element of conversion." Debtor has therefore failed to carry his burden here of establishing that the parties actually litigated and the jury determined that Debtor's conduct was not "willful and malicious." Failure to establish that this key factual issue was actually litigated and determined requires denial of Debtor's motion based collateral estoppel. *Cohen*, 103 B.R. 927. The parties must still litigate here the issue of Debtor's intent, since it is not yet established whether Debtor willfully and maliciously converted National Flour's funds. *See discussion in In re Dvorak*, 118 B.R. 619, 626 (Bankr.N.D.Ill. 1990).

### CONCLUSION

There are no genuine issues of material fact regarding the nondischargeability of the $50,000 in compensatory damages awarded Sylvester by the District Court in *Bay State*. However, there are issues of material fact regarding the nondischargeability of the $70,025.79 in punitive damages awarded Sylvester by the District Court in *Bay State*, and that a trial is necessary to determine those issues. In Count I of the Adversary Complaint, Sylvester seeks judgment of nondischargeability for both of the foregoing awards. In addition, Count I of the Complaint is brought by both Sylvester and National Flour. Therefore, any relief granted by the Court with respect to the $50,000 damage portion of Sylvester's judgment would not dispose of the entire Count I. Because that is so, "partial summary judgment" may not be entered on Count I under controlling authority cited earlier.

Accordingly, Sylvester's Motion for Summary Judgment is denied. However, pursuant to Rule 56(d) Fed.R.Civ.P., the Court finds there is no controversy with regard to the following facts:

that Defendant William Martin, Sr. made a false representation to Plaintiff Sylvester; that he did so either knowingly or recklessly without caring whether the misrepresentation was true or false; that he made said misrepresentation with the intent to deceive Sylvester; that Sylvester reasonably relied on said misrepresentation; that by reason of the foregoing Sylvester suffered actual damages of $50,000; that judgment was entered in Sylvester's favor against Defendant for such damages; and Defendant William Martin is entitled to setoff against Sylvester's judgment the amount of $20,000 by reason of Martin's judgment against Sylvester in another case.

The Motion of Defendant for Summary Judgment is also denied.

By Pretrial Order heretofore entered April 4, 1991, this case was set for trial to commence October 21, 1991. That Pretrial Order and trial setting will stand.

### EXHIBIT D

United States District Court

Eastern District of Wisconsin

Case No. 85–C–1242

Bay State Milling Company, Plaintiff,

v.

National Flour Company of Wisconsin, Inc., Philip R. Sylvester, and William W. Martin, Sr., Defendant.

SPECIAL VERDICT AS BETWEEN BAY STATE MILLING COMPANY AND WILLIAM W. MARTIN, SR.

1.

Did Bay State Milling Company receive a letter from William W. Martin, Sr., dated

March 1, 1985, in which William W. Martin, Sr. provided written notice of his revocation of his guaranty?

Answer: <u>No</u>
Yes or No

**2.**

If you answered "Yes" to Question 1, then answer this question:

On what date did Bay State Milling Company receive the letter dated March 1, 1985?

Answer: (Date) <u>N/A</u>

**3.**

If you answered "Yes" to Question 1, then answer this question:

What was the amount of debt incurred by National Flour Company of Wisconsin, Inc. prior to the date Bay State Milling Company received the letter?

Answer: $ <u>N/A</u>

**4.**

With respect to your answer in Question 3, answer the following question:

Does the amount of money which you determined in Question 3 put Bay State Milling Company in the same position it would have been in had William W. Martin, Sr. fulfilled the terms of his guaranty?

Answer: <u>N/A</u>
Yes or No

**5.**

If you answered "Yes" to Question 1, then answer this question:

What was the amount of debt incurred by National Flour Company of Wisconsin, Inc. after the date Bay State Milling Company received the letter?

Answer: $ <u>N/A</u>

**6.**

With respect to your answer in Question 5, answer the following question:

Is William W. Martin, Sr. entitled to a credit for the amount determined in Question 5?

Answer: <u>N/A</u>
Yes or No

**7.**

If you answered "No" to Question 4, then answer this question:

What amount of money should William W. Martin, Sr. pay to Bay State Milling Company to put Bay State Milling Company in the same position it would have been in had William W. Martin, Sr. fulfilled the terms of his guaranty?

Answer: <u>$447,528.36</u>

AS BETWEEN PHILIP SYLVESTER, NATIONAL FLOUR COMPANY OF WISCONSIN, INC., AND WILLIAM W. MARTIN, SR.

**8.**

Did William W. Martin, Sr. make an untrue representation of fact, knowing it was untrue, or recklessly without caring whether it was untrue, and with the intent to deceive and induce Philip Sylvester to act upon it?

Answer: <u>Yes</u>
Yes or No

**9.**

If you answered "Yes" to Question 8, then answer this question:

In view of all of the evidence, including Philip Sylvester's education, background and right to rely without independent investigation, did Philip Sylvester believe the representation to be true and justifiably rely on it to his pecuniary damage?

Answer: <u>Yes</u>
Yes or No

**10.**

If you answered "Yes" to both Questions 8 and 9, then answer this question:

What sum of money, if any, will fairly and reasonably compensate Philip Sylvester for his loss of the bargain?

Answer: $ <u>50,000</u>

**11.**

If you answered "No" to either or both Questions 8 and 9, then answer the following question:

Did William W. Martin, Sr. negligently make an untrue representation of fact to Philip Sylvester?

Answer: <u>N/A</u>
　　　Yes or No

**12.**

If you answered "Yes" to Question 11, then answer this question:

Did Philip Sylvester believe the representation to be true and rely on it to his pecuniary damage?

Answer: <u>N/A</u>
　　　Yes or No

**13.**

If you answered "Yes" to Questions 11 and 12, then answer this question:

Was Philip Sylvester negligent in relying upon the representation?

Answer: <u>N/A</u>
　　　Yes or No

**14.**

If you answered "Yes" to Questions 11 and 13, then answer this question:

Assuming that the total negligence which caused the injury to be 100%, what percentage of the negligence do you attribute to:

a. William W. Martin, Sr.
Answer: _____%
b. Philip Sylvester
Answer: _____%
Total: 100%

**15.**

What sum of money, if any, will fairly and reasonably compensate Philip Sylvester for his out-of-pocket loss?

Answer: $ <u>N/A</u>

**16.**

If you answered "No" to either or both Questions 8 and 9 and answered "No" to either or both Questions 11 and 12, then answer the following questions:

Did William W. Martin, Sr. make an untrue representation of fact as based on his own personal knowledge, or in circumstances in which he necessarily ought to have known the facts?

Answer: <u>N/A</u>
　　　Yes or No

**17.**

If you answered "Yes" to Question 16, then answer this question:

In view of all of the evidence, including Philip Sylvester's education, background and right to rely without independent investigation, did Philip Sylvester believe such representation to be true and justifiably rely on it to his pecuniary damage?

Answer: <u>N/A</u>
　　　Yes or No

**18.**

If you answered "Yes" to Questions 16 and 17, then answer this question:

What sum of money, if any, will fairly and reasonably compensate Philip Sylvester for his loss of the bargain?

Answer: $ <u>N/A</u>

**19.**

Did William W. Martin, Sr. commit a conversion of property belonging to National Flour Company of Wisconsin, Inc., that is, wrongfully transfer funds?

Answer: <u>Yes</u>
　　　Yes or No

**20.**

If you answered "Yes" to Question 19, then answer this question:

What sum of money, if any, will fairly and reasonably compensate National Flour Company of Wisconsin, Inc. for the damages which it sustained as a result of the actions of William W. Martin, Sr.?

Answer: $ <u>25,998.27</u>

**21.**

What sum of money, if any, do you assess in favor of Philip Sylvester and against William W. Martin, Sr. as punitive damages?

Answer: $ 70,025.79

Dated at Milwaukee, Wisconsin, this 16th day of August, 1988.

Jim Ballin
Foreperson